Ashbourne School et al., Petitioners *v.* Commonwealth of Pennsylvania, Department of Education, Respondent.

594

Argued March 7, 1979, before President Judge BOWMAN and Judges WILKINSON, JR., MENCER, ROGERS, BLATT, DISALLE and MACPHAIL. Judges CRUMLISH, JR. and CRAIG did not participate.

*John D. Killian,* with him *Killian & Gephart,* for petitioners.

*John A. Alzamora,* Assistant Attorney General, with him *Patricia A. Donovan,* Deputy Attorney General, Chief Counsel, for respondent.

*Robert L. Franklin* and *Franklin, Grodinsky, Boonin,* for amicus curiae, Arnold Melnick, D.O.

OPINION BY JUDGE DISALLE, June 28, 1979:

We have before us a petition for review filed on behalf of twelve private schools (Petitioners) previously approved by the Department of Education of the Commonwealth of Pennsylvania (Department) for the special education of state tuition reimbursable exceptional children.[1] In their challenge to the adjudication of the Secretary of Education (Secretary), dated April 11, 1978, Petitioners assign several allegations of error. Chief among these is the allegation that the Secretary erred in ordering that monies owing by the Commonwealth to these schools for the 1975-76 and 1976-77 school years be paid on a pro rata basis. In order to fully grasp Petitioners' various contentions, a brief examination of the legislative history of the Act of December 15, 1975 (Act 144), P.L. 484, which amended Section 1376 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §13-1376, and the operative facts giving rise to the present controversy must be undertaken.

Section 1376, both before and after the adoption of Act 144, placed 25% of the cost of tuition for a Pennsylvania resident approved reimbursed student on the school district of the child's residence and 75% on the Commonwealth. Act 144, however, amended Sec-

---

[1] An approved private school is a facility which has been licensed by the State Board of Private Academic Schools and whose special education program has been specifically approved by the Department. 22 Pa. Code §§171.11, 171.23. Approved status makes the school eligible for tuition and/or room and board reimbursement from the Department for the special education of handicapped students if their attendance at the school has itself been approved by the Department. Such students are called "Pennsylvania resident approved reimbursed students." 24 P.S. §13-1376(a).

tion 1376 in the following significant ways: (1.) higher maximum tuition rates were established; (2.) approved schools were prohibited from imposing any charge on the students and/or the parents; (3.) the Department was authorized to audit the approved schools' expenditures to determine the reasonableness of their charges; and, (4.) a determination of reasonable charges, if below the statutory maximum, would be considered an adjudication within the meaning of the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, *as amended, formerly* 71 P.S. §1710.1 et seq.[2] Also important for present purposes is the fact that Act 144, which was passed on December 15, 1975, was made retroactive to the beginning of the 1975-76 school year.

The Department conducted audits during the early months of 1977. Petitioners, availing themselves of the new tuition rates, as was their right, submitted financial data to the Department with claims which exceeded the pre-Act 144 rates. Not having sufficient monies to satisfy these higher claims, due in part to the legislature's failure to appropriate additional funds to meet the new tuition rates,[3] the Department notified the approved private schools that the appropriation had been depleted and that for all practical purposes there should be no expectation of further payment.

At the request of Petitioners, hearings commenced on May 3, 1977, before a Hearing Examiner appointed by the Secretary, to determine the overall status of Commonwealth funding and reimbursements and the

---

[2] Repealed by the Act of April 28, 1978, P.L. 202, 42 P.S. §2002 (a) [1244]. Similar provisions are now found at 2 Pa. C.S. §101 et seq.

[3] It also appears that the Governor removed $1,000,000 from the Department's 1975-76 approved private school appropriation in order to fund Hurricane Agnes flood relief.

amounts owing to each school. The Hearing Examiner made findings of fact and conclusions of law which were either accepted or rejected by the Secretary in making her adjudication.

The Secretary, obviously concerned about the equitable distribution of the remaining available funds, discussed three possible ways to solve the dilemma. The first possible course of action would have been to pay all allowable claims on a "first come, first served" basis. This was rejected outright as being grossly unfair and a possible violation of equal protection. The next possibility would have been for the Department to request a deficiency appropriation from the legislature. This also was discounted, since the Secretary felt compelled to honor the commitment of her predecessor who had promised the General Assembly that he would not secure a deficiency appropriation. The final possible course of action, and the one which was ultimately determined to be the most equitable, was to apportion the available monies on a pro rata basis so that each school received the same proportion of its approved tuition and room and board charges as every other school.

Petitioners, in their attempt to have all claims completely satisfied, impugn the Secretary's conclusion that proration is the proper method to solve the problem created by the shortage of funds. They postulate that the Department, in order to meet its 75% share, must utilize any state appropriation for special education, regardless of the specific purpose attached by the legislature to that appropriation.

In support of this proposition, Petitioners rely on the language of Section 1376(a) which provides, *inter alia*, that "the Commonwealth shall pay, out of funds appropriated to the department for special education," the reimbursements previously mentioned. They posit that there is nothing in this legislation which

would prohibit the payments from being from funds generally appropriated for special education, but specifically earmarked for other purposes. There is, however, a constitutional restriction on spending money that has not been appropriated for a specific purpose. This Court, in *Department of Public Welfare v. Harambee, Inc.*, 21 Pa. Commonwealth Ct. 430, 346 A.2d 594 (1975), explained that Article III, Section 24 of the Pennsylvania Constitution prohibits money from being paid out of the treasury except on appropriations made by law. It follows, therefore, that where the General Assembly has allocated specific funds from which payments are to be made to these approved private schools, the Department is powerless to use funds appropriated for other purposes to satisfy its debts to Petitioners. This Court, even if it felt so inclined, could not compel the Secretary to pay out monies not yet appropriated since such an order would be in direct contravention of the Constitutional mandate. *Tate v. Antosh*, 3 Pa. Commonwealth Ct. 144, 281 A.2d 192 (1971). We must conclude, therefore, that the statutory language of Section 1376(a) can, at best, be viewed only as a general description of a certain type of fund to be used rather than a command that any and all special education appropriations are to be used to meet Petitioners' claims.

Nevertheless, Petitioners argue that the Department's failure to fully reimburse them constitutes an unconstitutional taking of property without either due process or just compensation and is an impairment of the constitutional right to contract. The latter contention can be disposed of readily since we are in agreement with the Secretary's finding that there is nothing in the record to establish a contract between Petitioners and the Department. The former contentions, although seemingly more complex, are also

capable of quick resolution. The Department's obligation to pay for the services rendered by the approved private schools is limited by the legislative pronouncement that these institutions be paid only from funds designated for that purpose. When Petitioners agreed to accept Pennsylvania resident approved reimbursed students they did so knowing the statutory and constitutional restrictions on the Department's ability to pay for those services. In fact, the right of Petitioners to receive reimbursement is not questioned. Given the shortage of funds, however, the issue became who was entitled to payment and in what amounts. Having previously concluded that disbursement on a pro rata basis is an acceptable method of solving this dilemma, we cannot determine that Petitioners' constitutional rights have been violated.

The next series of challenges raised by Petitioners centers around the Department's regulations governing audit procedures. Petitioners first claim that they have been denied due process of law in that the criteria set forth at 22 Pa. Code §171.19(e)(2) are too indefinite to provide a guide as to what charges are reimbursable. The regulation instructs the auditors to disallow any charges, or portions thereof, which are ''excessive or unreasonable.'' While it is true that these criteria are of a general nature, this factor alone is not sufficient for us to hold the regulation invalid. The test which controls our determination is whether the regulation is reasonable. *Uniontown Area School District v. Pennsylvania Human Relations Commission*, 455 Pa. 52, 313 A.2d 156 (1973); *Pennsylvania Association of Life Underwriters v. Department of Insurance*, 29 Pa. Commonwealth Ct. 459, 371 A.2d 564 (1977).

In examining this regulation for reasonableness, we are guided by the meaning given to it by the De-

partment. *See State Dental Council and Examining Board v. Pollock*, 457 Pa. 264, 318 A.2d 910 (1974). The Department points to the language of Section 1376 which speaks in terms of costs related to "tuition" and "room and board." It then refers us to 22 Pa. Code §171.11 which defines both "tuition and maintenance" and "ancillary costs." Taken together, the statutory and regulatory criteria provide sufficient guidance for conducting audits and taking subsequent administrative actions regarding reasonable costs. In any event, the regulation in question was only recently promulgated. It may be that after a significant number of determinations based on these criteria have been made, they will prove to be unreasonable. However, on the present record, we are not prepared to so hold at this time. *See Hospital Association of Pennsylvania v. Bachman,* 40 Pa. Commonwealth Ct. 262, 397 A.2d 65 (1979).

Petitioners next argue that because the Department did not adopt its audit regulations until July 16, 1976, it is precluded from applying them retroactively to claims for the 1975-76 school year. Agencies may, of course, adopt retroactive regulations so long as they do not disturb vested rights, the impairment of contracts, or the principles relating to due process. *Jenkins v. Unemployment Compensation Board of Review,* 162 Pa. Superior Ct. 49, 56 A.2d 686 (1948). Petitioners contend that these regulations have interfered with their vested right to compensation. It should be noted that while this contention is predicated on the higher maximum rates established by Act 144, the retroactive effect of the Act itself is not challenged. Thus, it seems that Petitioners want all the benefits of Act 144 but none of the burdens which attach thereto.

A right is not vested unless it is fixed and without condition. *Miller v. Johnstown Traction Co.*, 167 Pa.

Superior Ct. 421, 74 A.2d 508 (1950). In the instant case, Petitioners' claim attributable to the new tuition rates set by Act 144 could not have been fixed by any pre-school year contractual agreement. Furthermore, to the extent that Act 144 made reimbursement of costs subject to Department review and audit, compensation predicated upon the new tuition rates must be deemed conditional, not vested. We conclude, therefore, that the Department acted properly in making these audit regulations retroactive.

In summary, we determine that the Secretary's adjudication is in accordance with the law and supported by substantial evidence. Accordingly, we affirm.

### ORDER

AND Now, this 28th day of June, 1979, the adjudication of the Secretary of Education, dated April 11, 1978, ordering that monies appropriated for approved private schools for fiscal years 1975-76 and 1976-77 should be paid out to those schools on a pro rata basis, is hereby affirmed.