**Robert B. SHER and Victoria Sher**

v.

**BERKS COUNTY BOARD OF ASSESSMENT APPEALS,**
**Appellant.**

Commonwealth Court of Pennsylvania.

Reargued Dec. 12, 2007.
Decided Jan. 11, 2008.

Edwin L. Stock, Reading, for appellant.

Konrad B. Jarzyna, Kutztown, for appellees.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and FRIEDMAN, Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge SMITH–RIBNER.

The Court en banc heard reargument in this appeal taken by the Berks County Board of Assessment Appeals (Board) from the order of the Court of Common Pleas of Berks County that reversed the Board's decision to increase the preferentially assessed value of property owned by Robert B. and Victoria Sher for the tax year 2006 pursuant to the Act of December 8, 2004, P.L. 1785 (Act 235).[1] This Act

---

1. By opinion and order filed July 27, 2007, a three-judge panel of the Court reversed the trial court's order. The Court subsequently granted the Shers' application for reargument, vacated the July 27, 2007 order and listed the case for reargument before the Court en banc. The parties were directed to address the issue of the retroactive applica-

amended the Pennsylvania Farmland and Forest Land Assessment Act of 1974, commonly known as the Clean and Green Act, Act of December 19, 1974, P.L. 973, *as amended,* 72 P.S. §§ 5490.1–5490.13. The issues include whether the Board exceeded its authority in applying Act 235 to the Shers' enrolled property and whether it engaged in an impermissible retroactive application of the Act.

## I

The Shers own property at 325 Mine Lane, Oley, in Berks County, consisting of 13.03 acres improved with a two-story dwelling and two garages. In May 1996 they applied to enroll their property in the preferential assessment or Clean and Green Program (Program) listing 10 acres as a tillable agricultural use, 2 acres as a forest and 1 acre as a reserved home site.[2] The property was enrolled in 1997 and was given a preferential assessment value of $160,000. By Section 4 of the Act of December 21, 1998, P.L. 1225 (Act 156), the legislature added Section 4.2, 72 P.S. § 5490.4b, to the Clean and Green Act, permitting "farmstead land" to be eligible for preferential tax assessment as part of agricultural use, agricultural reserve and forest reserve. Section 2, 72 P.S. § 5490.2, defines "farmstead land" as "[a]ny curtilage and land situated under a residence, farm building or other building which supports a residence, including a residential garage or workshop." The Board assessed the property under Act 156 at $113,700 beginning 1999.

By Section 3 of Act 235, the Legislature amended subsections (a) and (b) of Section 4.2 of the Clean and Green Act and added subsection (d), effective February 7, 2005, making farmstead land located in an area enrolled as agricultural reserve or forest reserve no longer eligible for a preferential assessment unless a majority of the land is enrolled as an agricultural land use.[3] On

---

tion of Act 235 to the Shers' property. The Board filed a supplemental brief upon reargument addressing that issue.

**2.** The purpose of the Clean and Green Act is "to protect a landowner from being forced to cease agricultural development or sell a portion of . . . land in order to pay unusually high taxes" and "to assure landowners that their land would not be assessed at the same rate as adjacent property under pressure to be developed and not enrolled in the program by ignoring the development value of land for tax purposes and encouraging landowners to preserve the land in its current state." *Saenger v. Berks County Board of Assessment Appeals,* 732 A.2d 681, 682, n1 (Pa.Cmwlth. 1999). *See also* 7 Pa.Code § 137b.1. Section 3(a) of the Clean and Green Act, 72 P.S. § 5490.3(a), provides that "[f]or general property tax purposes, the value of land which is presently devoted to agricultural use, agricultural reserve, and/or forest reserve shall, on application of the owner and approval thereof as hereinafter provided, be that value which such land has for its particular land use category. . . ."

**3.** Section 4.2 as amended in 2004 provides in relevant part:

(a) For each application for preferential assessment, the county assessor shall establish a total use value for land in *agricultural use,* including *farmstead land,* and for land in *agricultural reserve* by considering available evidence of the capability of the land for its particular use utilizing the USDA–NRCS [United States Department of Agriculture–Natural Resources Conservation Service] Agricultural Land Capability Classification system and other information available from USDA-ERS [Economic Research Service], The Pennsylvania State University and the Pennsylvania Agricultural Statistics Service. Contributory value of farm buildings shall be used.

(b) For each application for preferential assessment, the county assessor shall establish a total use value for land in *forest reserve* by considering available evidence of capability of the land for its particular use. Contributory value of farm buildings shall be used.

. . . .

October 31, 2005, the Berks County Assessment Office sent the Shers a Clean and Green Assessment Notice stating that the assessed value of their property had been changed for tax year 2006 as a result of Act 156 and Act 235. The notice set $197,700 as the 2006 market value, $113,700 as the 2005 clean and green value and $158,500 as the 2006 clean and green value. The Shers appealed to the Board, and the County Mapping Office thereafter categorized 7.23 acres or 55 percent of the total acreage as forest reserve. After a hearing, the Board issued a final notice assessing the property at $158,500 for tax purposes and $197,700 as the full market value.

The parties submitted agreed-upon findings of fact to the trial court.[4] The trial court concluded that the increase in assessment constituted an illegal spot reassessment, and it determined that the Clean and Green Act permits a change in preferential use assessment and imposition of rollback taxes based only upon a change in use and ownership, division or a conveyance of land under Section 5.1 of the Clean and Green Act, added by Section 6 of the Act of December 21, 1998, P.L. 1225, 72 P.S. § 5490.5a. The trial court relied upon Section 4(f)(2), 72 P.S. § 5490.4(f)(2), which provides that "[p]referential assessment on land which continues to meet the provisions of section 3 shall not lapse and shall continue at the same rate previously established under section 4.2," and it stated:

> (d) For purposes of this section:
> (1) Farmstead land located within an area enrolled as agricultural use shall be assessed at agricultural use value.
> (2) *Farmstead land located within an area enrolled as agricultural reserve or forest reserve shall be assessed at agricultural use value if* . . .:
> (i) *a majority of land in the application for preferential assessment is enrolled as agricultural use land*. . . . (Emphasis added.)

Under § 5490.4b(a), the rights and duties of the landowner are set at the time of the filing of the application. . . . [O]nce the preferential use assessment is set, the Board cannot increase the preferential assessment, unless one of the triggering events occurs. A change in the law is not a triggering event unless . . . the legislature specifically intends it to be so. . . . [A] landowner who does not seek an amendment and continues to comply with all terms and conditions of the Clean and Green Act should also be able to rely on the continuation of the preferential assessment rate set at time of application, even when there is a change in the law.

Trial Court Opinion, pp. 7–8. The trial court also concluded that Act 235 cannot be applied retroactively to increase an assessment when it affected the taxpayer's right to reduction in property tax in exchange for an agreement to restrict land use.

## II

The Board argues that if the trial court's decision was correct, the Shers should not have benefited from a reduction of the preferential assessment of their property from $160,000 to $113,700 in 1999. It notes that tax revenues dropped significantly after the legislature enacted Act 156; that it enacted Act 235 to increase tax revenues and to decrease the

---

**4.** This Court's review in a tax assessment appeal is limited to determining whether the trial court abused its discretion, committed an error of law or reached a decision not supported by substantial evidence. *In re Springfield School District*, 879 A.2d 335 (Pa. Cmwlth.2005). A statute creating a preferential tax treatment must be strictly construed against the taxpayer. *Moyer v. Berks County Board of Assessment Appeals*, 803 A.2d 833 (Pa.Cmwlth.2002).

inequalities of the tax burden; that Act 235 must be applied to properties already enrolled in the Program to achieve the legislative goal; and that Act 235 was not applied retroactively because the Board did not seek to collect additional taxes from the Shers for the years when their property was assessed under Act 156. In their amicus curiae brief, the County Commissioners Association of Pennsylvania argues that the Shers' 1996 application contained inaccurate information related to their property acreage, that the Board was required to correct the mathematical errors and that no spot reassessment occurred because the Board's actions involved not only the Shers' property but all other properties enrolled in the Program.

The Shers argue that the regulations cited by the Board apply only to new applicants and that the Board may not change the preferential assessment of property already enrolled in the Program without a triggering event.[5] They contend that a statute cannot be applied retroactively to alter substantive rights unless the legislature clearly intended such retroactive application. They also contend that by enrolling their property in the Program they agreed to preserve their land in its current state in return for the Commonwealth's agreement to reduce the property tax on their property and that the application of Act 235 changed the terms of the agreement, which affected their substantive and/or contractual rights.[6]

■ Section 1.1 of the Act commonly known as the Second Class A and Third Class County Assessment Law (Assessment Law), Act of June 26, 1931, P.L. 1379, *as amended,* added by Section 1 of the Act of December 13, 1982, P.L. 1165, 72 P.S. § 5342.1, defines a "[s]pot reassessment" as a "reassessment of a property or properties that is not conducted as part of a countywide revised reassessment and which creates, sustains or increases disproportionality among properties' assessed values." Assessment boards are prohibited from engaging in spot reassessment. Section 7.1 of the Assessment Law, added by Section 2 of the Act of July 19, 1991, P.L. 91, 72 P.S. § 5348.1; *Radecke v. York County Board of Assessment Appeals,* 798 A.2d 265 (Pa.Cmwlth.2002). The county assessors and the board "cannot reassess less than an entire county except as correction of errors *or as otherwise specifically provided by statute." Vees v. Carbon County Board of Assessment Appeals,* 867 A.2d 742, 747 (Pa. Cmwlth.2005) (emphasis added). *Compare Shenandoah Mobile Co. v. Dauphin County Board of Assessment Appeals,* 869 A.2d 562 (Pa.Cmwlth.2005) (holding that the addition of all cellular towers within the county, not previously assessed during countywide reassessment, was an initial assessment and not an impermissible spot reassessment).

The Clean and Green Act requires the county board of assessment appeals to ad-

---

5. Section 6.1 of the Act of June 26, 1931, P.L. 1379, commonly known as the Second Class A and Third Class County Assessment Law, *as amended,* added by Section 2 of the Act of July 19, 1991, P.L. 91, 72 P.S. § 5347.1, permits the subordinate assessors to "change the assessed valuation on real property when a parcel of land is divided and conveyed away in smaller parcels or when improvements are made to real property or existing improvements are removed from real property or are destroyed."

6. The trial court did not address the Shers' contention that the majority of their property enrolled in the Program was for an agricultural use. In their brief filed in response to the amicus curiae brief, the Shers agree that the county assessors must accurately record the number of acres used for each land use category and that it is not an issue in this appeal. They do not argue that their home should be assessed at agricultural use value on the basis that the majority of their land is enrolled as agricultural use.

just the initial application when a landowner who receives preferential assessment changes a deed because of a split-off, separation, transfer or change of ownership. Section 4(f)(1), 72 P.S. § 5490.4(f)(1). Further, "by May 1 of each year ... the department shall establish and provide to all county assessors county-specific use values for land in agricultural use and agricultural reserve" and that "by May 1 of each year ... the department shall establish and provide to all county assessors use values for land in forest reserve." Section 4.1(a) and (c), added by Section 4 of the Act of December 21, 1998, P.L. 1225, 72 P.S. § 5490.4a(a) and (c). The county assessors are required to update the record to reflect changes in the preferentially assessed value pursuant to Section 5(a)(1), 72 P.S. § 5490.5(a)(1), which provides:

> (a) In addition to keeping such records as are now or hereafter required by law, it shall be the duty of the county assessor:

> (1) To indicate on property record cards, assessment rolls, and any other appropriate records, the fair market value, the normal assessed value, the land use category and the number of acres enrolled in each land use category, the use value under section 4.2 and the preferentially assessed value of each parcel granted preferential use assessments under this act; *and annually, to record on such records all changes, if any, in the fair market value, the normal assessed value, the land use category and the number of acres enrolled in each land use category, the use value under section 4.2 and the preferentially assessed value of such properties.* (Emphasis added.)

The county assessor must notify in writing the property owner and the taxing body of such changes within five days. Section 5(a)(3), 72 P.S. § 5490.5(a)(3). The Act grants a right of appeal from a change in the valuations. *Id.* *See also* 7 Pa.Code §§ 137b.51, 137b.53, 137b.105, 137b.106 and 137b.107.

The trial court's conclusion that the Board may change the preferential assessment of the Shers' property only if a change is made as part of a countywide reassessment is not supported by the statutory scheme. In *Atlantic City Elec. Co. v. United School District,* 780 A.2d 766 (Pa.Cmwlth.2001), property that was used in generating electricity was exempt from local taxation under the applicable statute, which was later amended to remove the property from local tax exemption. The school board thereafter passed a resolution directing the county assessment office to add all electric generation properties to the tax rolls. The owner appellant argued that the addition of its property to the tax rolls constituted an unlawful spot reassessment. In rejecting this argument, the Court held at pages 772–773:

> [T]he present case involves the addition of property to the tax rolls after an exemption was statutorily abolished. [The owner's] complaint really is with the constitutionality of Act 4 [the amending act] as implemented through the assessment laws, but it has not articulated an argument as to why the legislature may not act for policy reasons to change the manner of regulation of a particular industry under the applicable equal protection analysis.... Similarly, ... the District did not treat [the owner's] property differently from all others.... All properties are subject to the mandates of the assessment laws as amended. (Citation omitted.)

Act 235 abolished the preferential tax assessment of farmstead land or a home site within an agricultural reserve and a forest reserve unless a majority of the land is an agricultural use. As in *Atlantic City*

*Elec.*, Act 235 affected not only the Shers' property but also affected all other properties enrolled in the preferential assessment program.[7] The Court concludes after its analysis of applicable statutory and case law that the Board's action does not constitute a spot reassessment of the Shers' property. Therefore, the Court rejects their argument in this regard.

 The trial court also erred in concluding that the Board impermissibly applied Act 235 retroactively. A statute shall be construed prospectively unless the legislature clearly intended otherwise. Section 1926 of the Statutory Construction Act of 1972, 1 Pa. C.S § 1926. A retroactive law is "one which relates back to and gives a previous transaction a legal effect different from that which it had under the law in effect when it transpired." *R & P Servs., Inc. v. Department of Revenue*, 116 Pa.Cmwlth. 230, 235, 541 A.2d 432, 434 (1988). However, "[w]here no vested right or contractual obligation is involved, an act or a regulation is not impermissibly construed retroactively when applied to a condition existing on its effective date, even though the condition results from events which occurred prior to that date." *Id.* A right is not vested unless it is fixed and without condition. *Ashbourne School v. Department of Education*, 43 Pa.Cmwlth. 593, 403 A.2d 161 (1979).

 The legislature has wide discretion in matters of taxation. *Devlin v. City of Philadelphia*, 580 Pa. 564, 862 A.2d 1234 (2004). The taxing authority's discretion is limited only by requirements of the Equal Protection and Uniformity Clauses of the United States and Pennsylvania Constitutions. *Free Speech, LLC v. City of Philadelphia*, 884 A.2d 966 (Pa.Cmwlth.2005). As for due process standards applicable to tax statutes with retroactive effect, the court stated in *United States v. Carlton*, 512 U.S. 26, 30–31, 114 S.Ct. 2018, 2022, 129 L.Ed.2d 22, 28 (1994): " 'Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches.... [T]he retroactive application of the legislation is itself justified by a rational legislative purpose.' " (Quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729–730, 104 S.Ct. 2709, 2717–2718, 81 L.Ed.2d 601, 611 (1984).) In upholding retroactive application of a statutory amendment adopted to correct a mistake in the original provision that would have created a significant and unanticipated revenue loss, the *Carlton* Court explained:

> [The taxpayer's] reliance alone is insufficient.... Tax legislation is not a promise, and a taxpayer has no vested right in the [tax statute].... "Taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract. It is but a way of apportioning the cost of government...."

*Id.*, 512 U.S. at 33, 114 S.Ct. at 2023, 129 L.Ed.2d at 30 (quoting *Welch v. Henry*, 305 U.S. 134, 146, 59 S.Ct. 121, 125, 83 L.Ed. 87, 93 (1938)).

The case in *Fidelity Bank, N.A. v. Commonwealth ex rel. Department of Revenue*,

---

7. In *In re Young*, 911 A.2d 605, 609, n10 (Pa.Cmwlth.2006), the Court distinguished *Atlantic City Elec.* on the basis that the change in the law in *Atlantic City Elec.* "resulted in a *previously unassessed property* becoming eligible for assessment and placement on the tax rolls after the yearly assessment had already taken place." (Emphasis in original.) However, *Young* did not involve a property enrolled in the preferential assessment program under the Clean and Green Act. The fact that the preferential assessment of the Shers' property was increased without the imposition of a new tax does not support their spot reassessment argument.

165 Pa.Cmwlth. 524, 645 A.2d 452 (1994), dealt with a legislative amendment to the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 7101–10004, in 1989, adding the New Bank Tax Credit Law, Sections 1901–1909, 72 P.S. §§ 8901–8909. In a taxpayer's challenge to the tax scheme of the 1989 amendment and the addition of the bank share tax, this Court found no due process violation and concluded that "the amendments were intended to recoup an expected shortfall in that year's bank shares taxes, which is a legitimate legislative concern." *Fidelity Bank,* 165 Pa.Cmwlth. at 538, 645 A.2d at 460. In upholding a challenge to application of the statute enacted in 1991 suspending the net loss carry-forward tax deduction to the loss suffered by the taxpayer in 1989, the Court in *Garofolo, Curtiss, Lambert & MacLean, Inc. v. Commonwealth Department of Revenue,* 167 Pa.Cmwlth. 672, 682, 648 A.2d 1329, 1334 (1994), held that "[a] tax deduction is not a vested right of the taxpayer" and that "[t]he net operating loss carry-forward deduction is a creature of the legislature, subject to repeal, suspension or reinstatement by the legislature, so long as it does not act in an arbitrary and unreasonable manner."

The legislative history of Act 235 establishes that it was enacted to promote the legitimate legislative purpose of closing the loophole of Act 156, advancing the equality of the tax burden and recouping the tax revenue loss that resulted from the preferential treatment conferred by Act 156.[8] Under *Carlton, Fidelity Bank* and *Garofolo,* the application of Act 235 to the Shers' property does not constitute an unlawful retroactive application. As the Board points out in its supplemental brief, the 2006 reassessed valuation of $158,500 for the property under Act 235 is less than the 1997 assessment of $160,000 when the property was enrolled originally in the Program before the enactment of Act 156. The record fails to show that the application of Act 235 "relates back to and gives a previous transaction a legal effect different from that which it had under the law in effect when it transpired." *R & P Servs. Inc.,* 116 Pa.Cmwlth. at 235, 541 A.2d at 434. The Shers had no vested right in the tax reduction, and thus the Board's action cannot be construed as an impermissible retroactive application of the Act. The Court accordingly reverses.

### ORDER

AND NOW, this 11th day of January, 2008, the Court reverses the order of the Court of Common Pleas of Berks County.

---

**8.** Before the Court, the Shers acknowledge that "Act 235 was passed to prevent developers from creating 10–acre mini estates that could benefit from preferential tax assessment under the Clean and Green Law." *See* Shers' Brief in Response to the Amicus Curiae Brief, p. 5. *See also* Exhibit B to the Board's Brief (Transcript of House of Representatives "Agriculture and Rural Affairs Committee" August 14, 2003 Public Hearing).