**Leonard BLAIR and Sharon Blair**

**v.**

**BERKS COUNTY BOARD OF ASSESSMENT APPEALS,**
**Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 2011.

Decided May 3, 2011.

Deborah A. Sottosanti, Reading, for appellant.

Paul A. Prince, Pottstown, for appellees.

BEFORE: PELLEGRINI, Judge, and BUTLER, Judge, and FRIEDMAN, Senior Judge.

OPINION By Senior Judge FRIEDMAN.

The Berks County Board of Assessment Appeals (Board) appeals from the June 11, 2010, amended order of the Court of Common Pleas of Berks County (trial court), setting the assessments for the property of Leonard and Sharon Blair (Appellees or the Blairs) for 2008 and 2009, and deferring consideration of the 2010 tax year pending disposition of this appeal.[1] We affirm.

Leonard Blair is now the sole owner of the property located at 63 Day Road, Rockland Township, Berks County (Property), which consists of 60.37 acres of land and is zoned R–1, Rural Conservation. The Property is currently enrolled in the "Clean and Green" program, which is authorized by the Pennsylvania Farmland and Forest Land Assessment Act of 1974, commonly known as the Clean and Green Act (Act), Act of December 19, 1974, P.L. 973, *as amended*, 72 P.S. §§ 5490.1–5490.13. The Property is enrolled as forest reserve.[2] It includes a "Farmstead," which, here, has been classified as a residence and the one acre of land upon which the residence sits.[3] Unlike the remainder of the Property, the Farmstead is not entitled to preferential assessment.[4]

After the residence and a pole barn were constructed on the Property, the Property was assessed on an interim basis as of January 1, 2008. The Blairs appealed to the Board from both the "full" mar-

---

1. The June 11, 2010, order amended the trial court's May 12, 2010, order by including the requisite language for an interlocutory appeal.

2. "Forest reserve" is "[l]and, ten acres or more, stocked by forest trees of any size and capable of producing timber or other wood products." Section 2 of the Act, 72 P.S. § 5490.2.

3. Although Appellees assert that the footprint of the house is not large enough to support a measurement of one acre of land beneath it, (Appellees' brief at 19), the precise amount of land thereunder is apparently not at issue. Moreover, we note that the Act does not define the term "Farmstead," but section 2 of the Act, 72 P.S. § 5490.2, and 7 Pa.Code 137b.2 define "[f]armstead land" as "[a]ny curtilage and land situated under a residence, farm building or other building which supports a residence, including a residential garage or workshop." "Curtilage" is defined as "[t]he land surrounding a residential structure and farm building used for a yard, driveway, on-lot sewage system or access to any building on the tract." *Id.* Further, "[f]arm building" is defined as "[a] structure utilized to store, maintain or house farm implements,

agricultural commodities or crops, livestock and livestock products. . . ." *Id.*

4. "Preferential assessment" is defined as "[t]he total use value of land qualifying for assessment under the act." 7 Pa.Code § 137b.2. We explained in *Herzog v. McKean County Board of Assessment Appeals*, 14 A.3d 193, 195 n. 4 (Pa.Cmwlth.2011):

> Although not defined in the . . . Act, "use value" represents value to a specific user; it is premised on the productivity of the good in question and may vary depending on the current conditions in the marketplace. *See F & M Schaeffer Brewing Co. v. Lehigh County Board of Appeals,* 530 Pa. 451, 457, 610 A.2d 1, 3 (1992). *See also* BLACK'S LAW DICTIONARY 1692 (9th ed.2009) (defining "use value" as a value established by the utility of an object, not its sale or exchange value).

Moreover, section 3(a) of the Act, 72 P.S. § 5490.3(a), provides that, "[f]or general property tax purposes, the value of land which is presently devoted to agricultural use, agricultural reserve, and/or forest reserve shall, on application of the owner and approval thereof as hereinafter provided, be that value which such land has for its particular use category. . . ."

ket value and Clean and Green value interim assessments. The Board held a hearing and then issued a decision recalculating the assessments. The Blairs appealed to the trial court on April 21, 2008.

On September 1, 2008, the assessment office issued its assessment for the 2009 tax year, retaining the interim assessment figures calculated by the Board. On or about September 26, 2008, the assessment office issued a new interim assessment for 2009, effective October 1, 2008, to adjust for the construction of a second metal storage shed/pole barn. By agreement of the parties, the Blairs' appeal incorporated review of the October 1, 2008, interim assessment.

At the trial de novo, the parties agreed that Bruce R. Hall, a state-certified, general appraiser whom the Blairs retained, would establish the fair market value of the Property. Hall also provided fair market values for the Farmstead, which were agreed to by the parties, and the fair market values for the house alone. Finally, the parties stipulated to the 2008 and 2009 values of the 59.37 acres of land subject to preferential assessment. The Berks County common level ratio (CLR) for the 2008 tax year was .681 and for the 2009 tax year was .657.[5]

On these facts, the trial court first stated that, because the Property was enrolled as forest reserve rather than agricultural use, the one acre on which the residence sits is not entitled to preferential assessment. In this regard, the trial court cited

Section 4.2 of the Act, 72 P.S. § 5490.4b,[6] which provides in relevant part:

(b) For each application for preferential assessment, the county assessor shall establish a total use value for land in forest reserve by considering available evidence of capability of the land for its particular use. Contributory value of farm buildings shall be used.

. . .

(d) For purposes of this section:

. . .

(2) Farmstead land located within an area enrolled as agricultural reserve or forest reserve shall be assessed at agricultural use value if . . . (i) a majority of land in the application for preferential assessment is enrolled as agricultural use land[.]

The trial court also relied on *Sher v. Berks County Board of Assessment Appeals,* 940 A.2d 629, 631 (Pa.Cmwlth.2008), in which this court stated that "land located in an area enrolled as agricultural reserve or forest reserve [is] no longer eligible for a preferential assessment unless a majority of the land is enrolled as an agricultural land use."

The trial court then considered whether the CLR should be applied to the Farmstead, i.e., property located within a preferentially assessed area, but which is not itself entitled to preferential assessment. The trial court stated that, in this case, the grounds for the new assessment were the substantial improvements to the property under section 6.1 of what is commonly

---

5. Section 1.1 of what is commonly referred to as the Second Class A and Third Class County Assessment Law, Act of June 26, 1931, P.L. 1379, *as amended,* added by the Act of December 13, 1982, P.L. 1165, 72 P.S. § 5342.1, defines CLR as "[t]he ratio of assessed value to current market value used generally in the county as last determined by the State Tax Equalization Board. . . . "

6. Section 4.2 was added by the Act of December 21, 1998, P.L. 1225, No. 156, and was later amended by the Act of December 8, 2004, P.L. 1785, No. 235, which amended, *inter alia,* subsection (b) and added subsection (d), effective February 7, 2005.

referred to as the Second Class A and Third Class County Assessment Law (Law).[7] The trial court explained that, due to these improvements, the Farmstead, which was ineligible for preferential assessment under the applicable regulations and would normally retain base year value,[8] was instead being assessed at present-day fair market value. Determining that this procedure violated constitutional principles of uniformity, the trial court applied the county's CLR to the Farmstead's fair market value, mimicking the procedure for maintaining tax uniformity in an assessment appeal involving a non-Clean and Green property.

Last, the trial court reasoned that, because the parties had stipulated to the fair market value of the property, any issue as to how construction of the two pole barns affected its fair market value was moot. Nonetheless, the trial court addressed the issue, concluding that the contributory value of a farm building under the Act and the related regulations is set by subtracting what the fair market value of the property would be if the farm building were never constructed from the actual fair market value of the property with the farm building. Thus, the contributory value of the farm building may bear no relation to the cost of the improvement. The trial court further explained that, because Hall's figures for the pole barns' values

appeared to correspond with the General Assembly's intent, "the fair market values reached by Mr. Hall and stipulated to by the parties will not be increased by this Court to effect an increase in value based on the presence of the outbuildings." (Tr. Ct. Op. at 10.)

The trial court then issued an order setting the 2008 and 2009 assessment values for the property. The Board filed a petition for permission to appeal, which we granted on August 3, 2010.

■ On appeal, the Board first asks whether the trial court erred in applying the CLR to the Farmstead, or, stated another way, it asks whether the Farmstead's location on property enrolled in the Clean and Green program precludes application of the CLR to the Farmstead's fair market value.[9] Essentially, the Board argues that, despite the Farmstead's ineligibility for preferential assessment, because it is part of property enrolled as forest reserve under the Act, and because the Clean and Green program is a preferential assessment program, the trial court's application of the CLR was improper.

In support of its assertion that the Clean and Green classification applies to the entire property, the Board cites, *inter alia,* 7 Pa.Code § 137b.15, which provides that "[f]armstead land is an integral part

7. Act of June 26, 1931, P.L. 1379, *as amended,* added by the Act of July 19, 1991, P.L. 91, 72 P.S. § 5347.1. Section 6.1 of the Law, 72 P.S. § 5347.1, provides in part: "The subordinate assessors may change the assessed valuation on real property ... when improvements are made to real property or existing improvements are removed from real property or are destroyed."

8. Section 1.1 of the Law, 72 P.S. § 5342.1, defines "[b]ase year" as:
    [t]he year upon which real property market values are based for the most recent county-wide revision of assessment of real property

or other prior year upon which the market value of all real property of the county is based. Real property market values shall be equalized within the county and any changes by the board of assessment appeals shall be expressed in terms of such base year values.

9. Our review in a tax assessment appeal is limited to determining whether the trial court abused its discretion, committed an error of law, or rendered a decision unsupported by substantial evidence. *Sher,* 940 A.2d at 632 n. 4.

of land in agricultural use, agricultural reserve, or forest reserve." However, even if farmstead land is integral to forest reserve land under 7 Pa.Code § 137b.15, it is still treated differently for preferential assessment purposes. Moreover, we note that this regulation and others upon which the Board relies have not kept pace with the Act and are invalid to the extent they conflict with statutory law. *See Northern Area Personal Care Home Administrators Association v. Department of Public Welfare*, 899 A.2d 1182, 1188 (Pa.Cmwlth.2006) (providing, "where there is a conflict between a statute and a regulation promulgated thereunder, the statute must prevail"), *aff'd*, 591 Pa. 405, 919 A.2d 187 (2007).[10]

The Board further argues that, under *Hess v. Montgomery County Board of Assessment Appeals*, 75 Pa.Cmwlth. 69, 461 A.2d 333, 335 (1983), the Uniformity Clause of Article VIII, Section 1 of the Pennsylvania Constitution is inapplicable in Clean and Green cases.[11] However, *Hess* does not support the Board's argument that principles of tax uniformity do not apply to the Farmstead. Rather, we determined in *Hess* that Article VIII, Section 2 of the Pennsylvania Constitution empowered the General Assembly to treat land devoted to forest reserve, agricultural reserve and agricultural use as separate classes of real estate for purposes of taxation. *Id.* at 335.[12] Here, the Farmstead, by itself, is not a Clean and Green property. Indeed, the Farmstead is specifically excluded from preferential assessment by section 4.2 of the Act. As previously noted, the Board concedes as much in its brief. The Board specifically states that "the Farmstead on the Blairs' property was not eligible for the preferential assessment. Instead, the Farmstead would be assessed at market value." (Board's Brief at 12.) Therefore, to avoid a violation of the constitutional requirement of tax uniformity, the trial court necessarily applied the CLR, which, "despite any inherent weaknesses, is an accepted calculation of the common level existing in the district and the standard against which the taxpayer's assessment ratio should be measured for uniformity purposes." *Smith v. Carbon County Board of Assessment Appeals*, 10 A.3d 393, 406 (Pa.Cmwlth.2010) (footnote omitted).[13]

■ Next, the Board argues that, while the parties stipulated to the fair market

---

**10.** For this reason, we also summarily reject the Board's alternative argument that, even if the trial court correctly classified the Farmstead as "ineligible land" under 7 Pa.Code § 137b.2, it should not have applied the CLR to the Farmstead's fair market value because 7 Pa.Code § 137b.27, relating to the "assessment of ineligible land," does not provide for such a formula.

**11.** The Uniformity Clause of the Pennsylvania Constitution specifically provides: "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Pa. Const. art. VIII, § 1.

**12.** Article VIII, Section 2 of the Pennsylvania Constitution provides in relevant part: "The General Assembly may, by law ... [e]stablish standards and qualifications for private forest reserves, agriculture reserves, and land actively devoted to agricultural use, and make special provision for the taxation thereof." Pa. Const. art. VIII, § 2(b)(i).

**13.** Moreover, we note that section 3(g)(2) of the Act, 72 P.S. § 5490.3(g)(2), added by the Act of December 8, 2004, P.L. 1785, No. 235, specifically allows the county commissioners to "adopt an ordinance to include farmstead land in the total use value for land in forest reserve." The statute further requires that any such ordinance be applied uniformly to all land in forest reserve in the county. Clearly, the commissioners' failure to adopt such an ordinance does not obviate uniformity requirements where they otherwise would be required.

value of the Property, such that no adjustment in value is required, in a case where the parties did *not* stipulate to the fair market value of the Property, it would be proper to increase the Property's fair market value based on the presence of farm buildings upon it. Once again, the Board relies for its assertions on both the Act and the regulations.[14]

Pursuant to Section 4.2 of the Act, 72 P.S. § 5490.4b(b), the total use value for land in forest reserve includes "contributory value of farm buildings." Section 2 of the Act, 72 P.S. § 5490.2, defines "[c]ontributory value of [a] farm building" as "[t]he value of the farm building as an allocated portion of the total fair market value assigned to the tract, irrespective of replacement cost of the building." Further, 7 Pa.Code § 137b.54 provides:

> **Calculating the contributory value of farm buildings.**
>
> A county assessor shall be responsible to calculate the contributory value of farm buildings on enrolled land. The method of calculating the contributory value of a farm building shall be a method based upon the fair market comparison and the extraction of the value of the farm building from the total fair market value of the parcel.

Here, the trial court stated that, "[i]n essence, the contributory value of the farm building is set by *subtracting* what the fair market value of the Property would be if the farm building were never constructed from the actual fair market value of the Property, which includes the presence of the farm building." (Tr. Ct. Op. at 9) (emphasis added). This method is consistent with 7 Pa.Code § 137b.54, which requires a fair market comparison and the

extraction of the contributory value of a farm building from a parcel's total fair market value. This method is also consistent with Section 2 of the Act, 72 P.S. § 5490.2, because the contributory value of a farm building is an allocated portion of a tract's total fair market value and because the formula is not based on a farm building's replacement cost. We discern no error in the trial court's approach.

Accordingly, we affirm.

### ORDER

AND NOW, this 3rd day of May, 2011, the amended order of the Court of Common Pleas of Berks County, dated June 11, 2010, is hereby affirmed.

---

14. We recognize that the trial court deemed this issue moot based on the parties' stipulation. However, because the trial court nevertheless considered the question, and because we granted the Board's petition for permission to appeal in part on this issue, we now decide the issue, despite the advisory nature of doing so.