Beverly A. MELCHER

v.

**BERKS COUNTY BOARD OF
ASSESSMENT APPEALS,
Appellant.**

Commonwealth Court of Pennsylvania.

Argued May 13, 2014.
Decided June 4, 2014.

Edwin L. Stock, Reading, for appellant.

Jeffrey C. Karver, Boyertown, for appellee.

BEFORE: LEAVITT, Judge,
BROBSON, Judge, and COVEY, Judge.

OPINION BY Judge BROBSON.

Appellant Berks County Board of Assessment Appeals (Board) appeals from an order of the Court of Common Pleas of Berks County (trial court), dated September 17, 2013. The trial court sustained the appeal of Beverly A. Melcher (Landowner), thereby reversing the Board's decision to terminate the preferential tax assessment of Landowner's property and impose roll-back taxes pursuant to the Pennsylvania Farmland and Forest Land Assessment Act of 1974, commonly referred to as "Act 319" or the "Clean and Green Act" (Act).[1] For the reasons set forth below, we now affirm.

█ The Act provides preferential real estate tax assessment for land based upon its use for agricultural purposes or as agricultural or forest reserves, provided that it complies with certain statutory requirements. *See* Section 3 of the Act, 72 P.S.

---

**1.** Act of December 19, 1974, P.L. 973, *as*     *amended,* 72 P.S. §§ 5490.1–5490.13.

§ 5490.3. If a landowner changes the use of any tract of land subject to preferential assessment under the Act, such that the tract no longer qualifies for the preferential assessment, the preferential assessment is revoked and the landowner is retroactively subjected to roll-back taxes.[2] *See* Section 5.1 of the Act, 72 P.S. § 5490.5a. Notwithstanding this general pronouncement, however, "[a] landowner may apply a maximum of two acres of a tract of land subject to preferential assessment . . . for a rural enterprise incidental to the operational unit without subjecting the entire tract to roll-back taxes, provided that . . . [t]he rural enterprise does not permanently render the land incapable of producing an agricultural commodity." Section 8(d)(1) of the Act, 72 P.S. § 5490.8(d)(1). The crux of the dispute between the parties is whether Landowner is operating a rural enterprise that exceeds two acres.

The tract of land at issue in this matter is a 109–acre parcel (Property) owned by Landowner as part of her 171–acre farm, which is located in Washington Township, Berks County. Landowner's husband had originally enrolled the Property in the Berks County Act 319 Program in 1993, and, following his death, Landowner reenrolled the Property in the program in 2005. Since 2003, Landowner has operated a dog training facility (Facility) on the Property, providing obedience training and teaching dogs to behave properly as house pets. Landowner also rents out the Facility for dog shows or trials twelve to fifteen times a year.

The Facility consists of two buildings—a large indoor training facility and a large fabric-covered training facility—as well as an outdoor arena, a paved parking area, and grassy areas for overflow parking. Access to the Facility from the closest public road, named Crow Hill Road, is obtained through a gravel road on the Property named Bella Vista Lane. Bella Vista Lane runs in a westerly direction from Crow Hill Road and passes to the south of the Facility. There are also two gravel roads within the Facility: one on the western portion of the Facility known as the "unused driveway," which runs north from Bella Vista Lane and turns eastward toward the large indoor training facility, and one which runs north from Bella Vista Lane to the paved parking area.

By letter dated December 21, 2012, the Berks County Assessment Office (Assessment Office) informed Landowner that she was in violation of the Act because the land used for the Facility exceeded the maximum two-acre tract of land that may be used for a rural enterprise. (Reproduced Record (R.R.) at 5a.) As a consequence, the Assessment Office terminated the preferential assessment and imposed roll-back taxes. (*Id.*) Landowner appealed the Office's notice of violation and, after a hearing, the Board upheld the Office's decision by letter dated January 30, 2013. (*Id.* at 6a.) In so doing, the Board calculated that Landowner owed roll-back taxes in the amount of $64,854.32, for tax years 2006 through 2012. (*Id.* at 6a–7a.)

Landowner then appealed to the trial court. Following a trial, the trial court

**2.** The Act defines "roll-back tax" as follows:

The amount equal to the difference between the taxes paid or payable on the basis of the valuation and the assessment authorized hereunder and the taxes that would have been paid or payable had that land been valued, assessed and taxed as other land in the taxing district in the current tax year, the year of change, and in six of the previous tax years or the number of years of preferential assessment up to seven.

Section 2 of the Act, 72 P.S. § 5490.2.

sustained Landowner's appeal and reversed the Board's decision. The trial court observed that the parties disputed whether three areas of the Facility should be included in calculating the acreage to be attributed to the rural enterprise and, if so, whether their inclusion resulted in a breach of the Act. These three areas included: (1) a portion of Bella Vista Lane adjacent to the Facility (Bella Vista Lane Component), (2) a grassy area located west of the outdoor arena, east of the unused driveway, south of the indoor facility, and north of Bella Vista Lane (Grassy Lot Component), and (3) an area described as buffer or curtilage that was 15–20 feet in width and ran along the perimeter of the Facility (Curtilage Component). Including all three of these components, the Board measured the rural enterprise to be 2.73 acres. Omitting all three of these components, Landowner measured the rural enterprise to be 1.834 acres.

The trial court noted that the measurements provided by the respective parties were not contested and that Landowner's expert, John T. Aston, III, a registered surveyor and professional engineer, was able to provide acreage figures for the disputed components. (Tr. Ct. Op. at 6.) Specifically, Mr. Aston estimated that the Bella Vista Lane Component consisted of .06 acres, the Grassy Lot Component consisted of .4 acres, and the Curtilage Component consisted of approximately .31 acres.[3] (*Id.* at 3–4.) Thus, the trial court accepted Landowner's estimate of 1.834 acres as a base figure for the Facility's acreage, with the understanding that any component or portion thereof that is used for the dog training operation would be added to the base figure. (*Id.* at 6.)

The trial court first concluded that the Curtilage Component should not be included in the total acreage measurement for the rural enterprise. The trial court reasoned that providing an area of space as a buffer can be done as a result of several concerns, but that no such concerns existed in this instance. (*Id.*) The trial court also reasoned that the Curtilage Component was not utilized for the dog training operation and served no Facility-related purpose. (*Id.*) The trial court further explained that there was no evidence that incorporation of the Curtilage Component was ever contemplated by Landowner for the operation and that, rather, the curtilage was artificially created by the Assessment Office and Board solely for purposes of this action. (*Id.*) The trial court observed that according to Landowner's expert, inclusion of the Curtilage Component was "reasonable but not necessary." (*Id.* at 7.)

The trial court also concluded that the Bella Vista Lane Component was not part of the rural enterprise. The trial court reasoned that Bella Vista Lane existed prior to the establishment of the dog training operation and was used by Landowner and her deceased husband in the farming operation. (*Id.*) The trial court observed that there was no evidence that Bella Vista Lane was modified, expanded, or otherwise improved to accommodate the Facility. (*Id.*) The trial court explained that Bella Vista Lane is not part of the Facility, but is merely a gravel road of general use, providing vehicle access to different areas of Landowner's property. (*Id.*) The trial court distinguished this case from its own precedent, wherein a network of driveways was considered part of the rural enterprise

---

**3.** Specifically, Mr. Aston estimated the northern curtilage to the rear of the two training facility buildings to be .18 acres, the easterly curtilage running along the east side of the fabric-covered arena and paved parking area to be .13 acres, and the curtilage along the south and west sides to be inconsequential. (Trial Ct. Op. at 3–4.)

because it was integral to the rural enterprise's operation, serving and supporting the use of various outbuildings. (*Id.*)

With regard to the Grassy Lot Component, the trial court observed that Landowner would like to have used the area for farming, but deemed it impractical due to its small size. (*Id.* at 8.) The trial court further observed that, nevertheless, the Grassy Lot Component is used for agricultural purposes, as there are two storage trailers and a small storage shed where Landowner stores hay, which she uses for feeding sheep. (*Id.*) The trial court explained that there was never an intention to use the Grassy Lot Component for the dog training operation, and that none of the plans or other exhibits provided for any parking within that area. (*Id.*) Nevertheless, approximately half of the time that dog trials were taking place, the designated parking areas could not accommodate all of the patrons' vehicles, so Landowner allowed vehicles to park in the Grassy Lot Component. (*Id.*) The trial court concluded that, though unintended, the land used for overflowing parking was required for the dog training operation and, therefore, must be included as part of the Facility. (*Id.*) The trial court reasoned, however, that the Facility would not exceed two acres if the portion of the Grassy Lot Component being used for parking did not exceed .166 acres. (*Id.*) Thus, using a series of estimations, assumptions, and inferences, the trial court calculated that .166 acres would be sufficient to accommodate the overflow parking. (*Id.* at 8–9.)

The trial court further found that Landowner intended to limit the Facility to two acres, that the design of the Facility as set forth in the plans was contained within two acres, and that the actual usage of the property for the Facility had not exceeded two acres, based on the credible testimony of Landowner and Mr. Aston. (*Id.* at 9.) The trial court advised Landowner to clearly mark off and set apart the portions of the Grassy Lot Component that would be available for patron parking, to ensure that the use never exceeds two acres. (*Id.*) The trial court also directed the Assessment Office to take a more active role in helping landowners to comply with the Act. (*Id.* at 10.) Finally, the trial court noted that if it had concluded that the Facility exceeded two acres, even slightly, it would have been constrained to impose the roll-back taxes. (*Id.*) In essence, Landowner would have been required to pay property tax based on the full market value of the Property, notwithstanding Landowner's simultaneous conservation of 106–plus acres of land, merely because Landowner was using a few tenths of an acre over and above the excused two acres for an ineligible purpose. (*Id.*) The trial court reasoned that such a result would have been draconian. The Board then appealed to this Court.

On appeal,[4] the Board argues that the trial court erred in concluding that Landowner was not in breach of the Act because the Facility is contained within two acres. The Board contends that the trial court erred in concluding that the Curtilage Component and Bella Vista Lane Component should not be included as part of the rural enterprise, and that only .166 acres of the Grassy Lot Component should be included. The Board also presents sev-

---

**4.** This Court's review in a tax assessment appeal is limited to determining whether the trial court abused its discretion, committed an error of law, or reached a decision not supported by substantial evidence. *Sher v. Berks Cnty. Bd. of Assessment Appeals,* 940 A.2d 629, 632 n. 4 (Pa.Cmwlth.2008). When the issues on appeal are questions of law, the standard of review is de novo and the scope of review is plenary. *Douglass Vill. Residents Grp. v. Berks Cnty. Bd. of Assessment Appeals,* 84 A.3d 407, 409 n. 3 (Pa.Cmwlth.2014).

eral policy arguments in support of its position.

The Board first argues that the trial court erred in concluding that the Curtilage Component should not be included as part of the rural enterprise because it is not utilized for the dog training operation and serves no Facility-related purpose. To the contrary, the Board argues that because the Curtilage Component is not used exclusively for an agricultural or foresting purpose, which purpose serves as the basis for enrolling the Property in the Berks County Act 319 Program, it should be included as part of the rural enterprise. Further, the Board argues that its inclusion of the Curtilage Component represents a common sense approach to calculating acreage attributable to a rural enterprise. The Board also argues that the Curtilage Component should be included because it is used to support the rural enterprise, as two underground storm pits are located within that area and are used for draining water away from one of the Facility's buildings.

We conclude that the trial court did not err in excluding the Curtilage Component from the rural enterprise. The Act defines curtilage as "[t]he land surrounding a residential structure and farm building used for a yard, driveway, on-lot sewage system or access to any building on the tract." 72 P.S. § 5490.2. The trial court found that the Curtilage Component is not used for the dog training operation and serves no Facility-related purpose. Moreover, the trial court observed that there was no need to provide a buffer area in this instance, as the circumstances did not require it. Additionally, although Mr. Aston agreed that it is typical for buildings to have some curtilage, he also testified that including the buffer area was not necessary. In this regard, we further note that nowhere in the Act or its regulations is it required that a buffer area be included in calculating the size of a rural enterprise. Thus, to affirm the Board's approach of including a buffer area, simply because it is reasonable to do so, would, in effect, impose a requirement not mandated by the Act. In light of the fact that the regulations accompanying the Act prohibit a county assessor from "impos[ing] eligibility requirements or conditions other than those prescribed in section 3 of the [A]ct"[5] with regard to a landowner's enrollment for a preferential assessment, 7 Pa.Code § 137b.18, we believe that allowing the Assessment Office or Board to impose such a buffer requirement in this regard would likewise be improper.[6]

The Board next argues that the trial court erred in concluding that the Bella Vista Lane Component should not be included as part of the rural enterprise because it existed prior to the establishment of the Facility, was not part of the Facility, and was a gravel road of general use. The Board argues that these circumstances do not negate the fact that Bella Vista Lane provides the only access to the Facility. Thus, the Board argues that the Bella Vista Lane Component is not exclusively used for an eligible purpose and is

---

5.  72 P.S. § 5490.3.

6.  As such, we reject the Board's argument to include the Curtilage Component as part of the rural enterprise because two storm pits happen to fall within the buffer area that the Assessment Office and Board determined to be "reasonable" to include. Further, we reject the Board's argument that because the Curtilage Component is not used exclusively for agricultural or foresting purposes, it should be included as part of the rural enterprise. The trial court found that the Curtilage Component was not used for the Facility and made no further findings as to the actual purpose for which the Curtilage Component is used.

integral to the operation of the Facility, and, therefore, it must be included in calculating the acreage of the rural enterprise.

We conclude that the trial court properly excluded the Bella Vista Lane Component from the rural enterprise. Specifically, we agree that because it consists of a gravel road of general use, which existed prior to the establishment of the Facility and which was not part of the Facility, and because there is no evidence demonstrating that it was modified, expanded, or otherwise improved to accommodate the Facility, the Bella Vista Lane Component is not part of the rural enterprise. Moreover, we reach our conclusion notwithstanding the fact that the Bella Vista Lane Component provides the only access to the Facility and is thus integral to its operation. Indeed, if we were to use this reasoning as advocated by the Board, it would appear that an even larger portion of Bella Vista Lane should have been included as part of the rural enterprise, as Bella Vista Lane continues as the only road leading to the Facility beyond the boundary lines demarcated by the Assessment Office and the Board. Given the circumstances of this case regarding the history and use of Bella Vista Lane, the Act does not require us to reach such an untenable result.[7]

■ We next address the Board's argument that the trial court erred in including only .166 acres of the Grassy Lot Component as part of the rural enterprise. The Board argues that the trial court improperly determined that only 7,230.96 square feet, or .166 acres, of the Grassy Lot Component should be included as part of the rural enterprise because that amount of space would be sufficient to accommodate the overflow parking at the Facility. The Board argues that there are three areas

where overflow parking occurs, and that the overflow parking on those areas is likely very random and not calculated to fit as many vehicles as possible into as small of a space as possible. The Board contends that it is clear that more than .166 acres was used for overflow parking, as the three areas were used for such a purpose without clear markings. The Board further notes that the trial court even recognized this in advising Landowner to clearly mark off portions of the Grassy Lot Component to be used for overflow parking to ensure the use never exceeds two acres.

We conclude that the trial court did not err in concluding that only .166 acres of the Grassy Lot Component should be included as part of the rural enterprise. The trial court observed that dog trials took place approximately twelve to fifteen times a year at the Facility and that overflow parking was necessary approximately half of that time. The trial court reasoned that taking into consideration the highest number of people in attendance at these trials, which Landowner testified to be 50, and assuming that each of those 50 people individually parked at the Facility, the remaining .166 acres of land that the Act permits to be applied toward a rural enterprise would sufficiently accommodate any overflow parking needs. Based upon this analysis, we discern no error in the trial court's determination.

■ Turning to the Board's policy arguments, the Board contends that the trial court failed to construe strictly the Act against the taxpayer as required and manipulated the land at issue in an obvious effort to keep the acreage of the Facility under two acres. The Board further argues that the trial court's decision sets an

7. For these same reasons, we reject the Board's argument that the Bella Vista Lane Component should be included because it is not exclusively used for an eligible purpose.

impossible standard for county assessment offices to follow, removing certainty from the administration of the Act. The Board argues that county employees must be permitted to utilize a common sense approach when determining if a breach of the Act has occurred, which would dictate that buffers/curtilage around buildings and access roads to the rural enterprise be included when determining the area used by the rural enterprise, in addition to taking into consideration the reality of the situation rather than the best-case, lowest-possible acreage scenario.

Upon review, we conclude that these policy concerns are more applicable to the Board's method of calculation. Specifically, we believe that it is the Board that has ignored the reality of the circumstances of this case: for years, Landowner preserved a considerable amount of land pursuant to the Act while operating a small dog training facility on the Property. Following a field inspection conducted several years after the re-enrollment of the Property in the Berks County Act 319 Program, the Assessment Office and Board determined that Landowner was .73 acres over the permitted two-acre maximum that may be applied to a rural enterprise conducted on property receiving a preferential assessment under the Act. In so doing, the Assessment Office and Board included (1) a buffer area not required to be included by the Act, (2) a road of general use that predated the establishment of the Facility and remained unchanged after its creation, and (3) all land areas that have been used for overflow parking at the Facility, which parking was only necessary a few times a year. As a result, the Board imposed roll-back taxes on the entire 109–acre parcel of land in the amount of $64,854.32. Moreover, it is worth noting that, although not required by the Act, the Assessment Office and Board never provided Landowner with any prior notice or warning that she may have been operating the Facility in violation of the Act.

Based on these circumstances and our analysis herein, we do not agree that the Board's method of calculation represents a common sense approach to discerning the acreage attributable to Landowner's rural enterprise, and we do not believe that the trial court's decision creates a difficult standard for county assessment offices to follow in administering the Act. Moreover, though the Board accuses the trial court of manipulating the tract of land at issue to fit within two acres, it is the Board that included land in its rural enterprise calculations without proper justification.[8]

In sum, we conclude that the trial court properly held that Landowner was not in breach of the Act. Based on the evidence, the trial court correctly concluded that Landowner's rural enterprise did not exceed two acres.

Accordingly, we affirm the trial court's order.

### ORDER

AND NOW, this 4th day of June, 2014, the order of the Court of Common Pleas of Berks County is hereby AFFIRMED.

---

**8.** The Board is correct in observing that a statute creating a preferential tax treatment must be strictly construed against the taxpayer. *See Sher,* 940 A.2d at 632 n. 4. Nevertheless, this requirement does not mandate that we affirm a method of calculation which would err on the side of including as much land as possible in order to disqualify a landowner from receiving a preferential assessment of her land, particularly based on the reasons advocated by the Board.