**Janice G. SAENGER, Appellant,**

v.

**BERKS COUNTY BOARD OF ASSESSMENT APPEALS.**

Commonwealth Court of Pennsylvania.

Argued May 17, 1999.

Decided June 18, 1999.

Stanley J. Burke, Reading, for appellant.

Edwin L. Stock, Reading, for appellee.

Before PELLEGRINI, J.,
LEADBETTER, J., and RODGERS,
Senior Judge.

PELLEGRINI, Judge.

Janice G. Saenger (Landowner) appeals from an order of the Court of Common Pleas of Berks County (trial court) affirming the decision of the Berks County Board of Assessment Appeals (Board) imposing roll-back taxes against her property for violations of the Pennsylvania Farmland and Forest Land Assessment Act of 1974 (Act), commonly known as the "Clean and Green Act".[1]

The facts of this case are undisputed. Landowner and her husband owned two parcels of property in Longswamp Township, Berks County, as tenants by the entireties. "Parcel 1" consisted of one tract measuring 39 acres, 121 perches, and "Parcel 2" consisted of two non-contiguous tracts located at either end of Parcel 1, and measuring 17.475 acres and 3.56 acres, respectively. In April 1993, Landowner and her husband made a single application to the Board requesting that both parcels receive a preferential land assessment for agricultural use [2] under the Act. Land qualifying for agricultural use, "shall have produced an agricultural commodity 3 years prior to application and shall presently be devoted to the production of an agricultural commodity. The land shall

---

1. Act of December 19, 1974, P.L. 973, *as amended*, 72 P.S. §§ 5490.1 – 5490.13. The intent of the Act is to protect a landowner from being forced to cease agricultural development or sell a portion of her land in order to pay unusually high taxes. 7 Pa.Code § 137.5. The Act created the "clean and green" program to assure landowners that their land would not be assessed at the same rate as adjacent property under pressure to be developed and not enrolled in the program by ignoring the development value of land for tax purposes and encouraging landowners to preserve the land in its current state. *Id.*

2. The definitional section of the Act, among others, was amended in December 1998. However, "agricultural use" at the time of this case was defined as, "[u]se of the land for the purpose of producing an agricultural commodity or when devoted to and meeting the requirements and qualifications for payments or other compensation pursuant to a soil conservation program under an agreement with an agency of the Federal Government." Section 2 of the Act, 72 P.S. § 5490.2.

also be ten contiguous acres[.]" 7 Pa.Code § 137.8. Because all of the parcels qualified for agricultural use, the Board granted Landowner's application and both parcels were accepted into the clean and green program [3] for the tax year beginning in 1994.

In October 1997, Landowner's husband died and she became the sole owner of both parcels. By deeds dated March 10, 1998, Landowner conveyed Parcel 1 to herself and her son, James G. Saenger (James), as joint tenants with the right of survivorship, and conveyed Parcel 2 to herself and her son, Peter G. Saenger (Peter), also as joint tenants with the right of survivorship.[4]

By letter dated April 6, 1998, the Berks County Assessment Office removed Parcel 1 and Parcel 2 from the clean and green program because Landowner's conveyance of the 3.56–acre tract to Peter constituted a "split-off" [5] under the Act. It stated that the 3.56–acre tract did not adjoin any other land owned by Peter and did not meet the ten-acre requirement to qualify independently for the program, subjecting both parcels to roll-back taxes [6] plus interest. Landowner appealed to the Board requesting reinstatement into the clean and green program. Following a hearing on April 20, 1998, the Board denied Landowner's request and upheld its prior imposition of roll-back taxes. Landowner appealed to the trial court.

Before the trial court,[7] Landowner argued that it was improper for the Board to

3. The 3.56–acre tract of Parcel 2 was never specifically identified in Landowner's application.

4. The 3.56–acre tract of Parcel 2 was not specifically mentioned in the deed to Peter, but was conveyed by remainder.

5. *See infra* p. 689.

6. A "roll-back tax" is "[t]he amount equal to the difference between the taxes paid or payable on the basis of the valuation and the assessment authorized hereunder and the taxes that would have been paid or payable had that land been valued, assessed and taxed as other land in the taxing district in the current tax year, the year of change, and in six of the previous tax years or the number of years of preferential assessment up to seven." Section 2 of the Act, 72 P.S. § 5490.2. When imposing roll-back taxes, Section 8(a) of the Act provides:

(a) When any tract of land which is in agricultural use ... and which is being valued, assessed and taxed under the provisions of this [A]ct, is applied to a use other than agricultural, ... or for any other reason, except condemnation thereof, is removed from the category of land preferentially assessed and taxed under this [A]ct, the land so removed and the entire tract of which it was part shall be subject to taxes in an amount equal to the difference, hereinafter referred to as roll-back taxes, if any, between the taxes paid or payable on the basis of the valuation and the assessment authorized hereunder and the taxes that would have been paid or payable had that land been valued, assessed and taxed as other land in the taxing district in the current tax year, the year of change, and in six of the previous tax years or the number of years of preferential assessment up to seven plus interest in each year's roll-back tax at the rate of six percent (6%) per annum. After the first seven years of preferential assessment, the roll-back shall apply to the seven most recent tax years.

72 P.S. § 5490.8(a). In this case, as of April 30, 1998, the roll-back taxes for the tax years 1994 through 1998 totaled $15,432.40.

7. Landowner was the only party to testify at the hearing and the substance of her testimony related to the previous and continued use of the 3.56–acre tract for agricultural use. At the beginning of the hearing, the parties produced a stipulation in which they agreed to the above facts and further agreed that there had been no change in the use of either Parcel 1 or Parcel 2 since they were accepted into the clean and green program, that the 3.56–acre tract had never been a part of Parcel 1, and that Landowner maintained a fee title interest in both parcels.

Landowner also attempted to offer two corrective deeds recorded on November 12, 1998, which purportedly reconveyed both Parcel 1 and Parcel 2 to Landowner as the sole owner. The Board objected to this evidence and the trial court sustained the objection. Landowner also attempted to offer testimony that the conveyance of the 3.56 acre tract to Peter was the result of attorney error. The Board again objected to this testimony and the trial court sustained the objection.

impose roll-back taxes because her conveyances did not affect a change in the use of the parcels. She asserted that roll-back taxes could only be imposed if there had been a split-off or a separation, either of which can only occur when there has been a change in use of the land. Because there had not been a change in use for either parcel, Landowner argued that neither a split-off nor a separation had occurred, making the imposition of roll-back taxes improper. The Board countered that when Landowner conveyed the parcels to herself and Peter as joint tenants, a split-off did occur. It asserted that because the Act required that when land was "split-off", to remain preferentially assessed, the "split-off" tract had to independently meet the requirements of the Act; if not, all the property from which the tract was "split-off" was subject to roll-back taxes under Section 6 of the Act. Section 6 provides in relevant part:

> (a) The split-off of a part of the land which is being valued, assessed and taxed under this act for a use other than agricultural [use] ... shall, except when the split-off occurs through condemnation, *subject the land so divided and the entire parcel from which the land was divided to liability for the roll-back taxes as set forth in section 8 of this act* except as provided in subsection (b). (Emphasis added).

72 P.S. § 5490.6(a). The Board argued that the 3.56 acre tract conveyed to Landowner and Peter was below the ten-acre requirement and could not remain preferentially assessed.

8. Regarding Landowner's contention that the conveyance of the 3.56–acre tract to Peter was committed in error, the trial court stated that the deed was clear and certain on its face such that the intent of the parties must be taken from the deed. It further stated that it must ascertain the meaning of the deed's words and not what the parties may have intended through parol evidence.

9. This Court's scope of review in a tax assessment appeal is limited a determination of whether the trial court committed an error of

 Finding that a split-off had occurred with the March 1998 deed conveyances, the trial court affirmed the Board's decision. It stated that the conveyances resulted in changes in ownership with "different rights and responsibilities, as well as different results in the event of death of such joint tenant." The trial court concluded that the 3.56–acre tract was less than the required ten contiguous acres for agricultural use and was separated by Parcel 1 from the other 17.457–acre tract which Peter also jointly owned, and although the use remained the same, there was no evidence that the 3.56 acres had an anticipated yearly gross income of $2,000, which is the alternative requirement under Section 3 of the Act to qualify for agricultural use.[8] This appeal by Landowner followed.[9]

As she did before the trial court, Landowner contends that the March 10, 1998 conveyances to her sons did not constitute a split-off under Section 2 of the Act because there was no change in use of the parcels. She asserts that because there was no change in use of the parcels, roll-back taxes cannot be assessed under the Act. However, the definition contained in the Act argues against this interpretation.

 Section 2 of the Act defines a "split-off" as:

> A *division*, by conveyance or other action of the owner, of land devoted to agricultural use, agricultural reserve or forest reserve and preferentially assessed under the provisions of this act *into two or more tracts of land, the use of which on one or more of such tracts*

law or abused its discretion. *Hydrusko v. County of Monroe*, 699 A.2d 828 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 550 Pa. 694, 704 A.2d 1383 (1997). It is well settled that a statute which creates preferential tax treatment for a person or property must be strictly construed against the taxpayer. Section 1928(b)(5) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1928(b)(5); *Deigendesch v. County of Bucks*, 505 Pa. 555, 482 A.2d 228 (1984).

*does not meet the requirements of section 3.* (Emphasis added).

72 P.S. § 5490.2.[10] Section 3 of the Act provides, in relevant part, that land divided as the result of a split-off has to be, "not less than ten contiguous acres in area". 72 P.S. § 5490.3(a)(1). On the other hand, when a conveyance creates a parcel that continues the preferential use and meets the requirements of Section 3 of the Act, i.e., a tract of ten contiguous acres, the division constitutes a separation and avoids the imposition of roll-back tax liability. *See* Section 2 of the Act, 72 P.S. § 5490.2 (defining "separation").

Relying on our decision in *In re Appeal of Phillips*, 48 Pa.Cmwlth. 85, 409 A.2d 481 (1979), Landowner continues to argue that Section 2 of the Act only requires that the use of the parcel meet the requirements of Section 3. We agree that in *Phillips*, we held that a split-off had not occurred because the land conveyed continued the same use (forest reserve) for which it received the preferential use assessment, even though ownership had been transferred. However, after our decision in *Phillips*, the General Assembly amended the Act and adopted a definition for split-off in order to accommodate the type of transfer that occurred in *Phillips*, where only the ownership structure changed but not the use of the parcel. As a result of this amendment, in *Feick v. Berks County Board of Assessment Appeals*, 720 A.2d 504 (Pa.Cmwlth.1998), we held that when ownership was transferred and the prefer-

ential use remained the same for purposes of the assessment, a parcel was subject to roll-back taxes if it failed to meet the use and acreage requirements of Section 3 of the Act, i.e., the land divided as the result of a split-off had to be greater than ten contiguous acres in area. In other words, if any land that was "split-off" could not satisfy the criteria for entry into the clean and green program, all of the land listed in the application was subject to roll-back taxes under Section 6 of the Act.

 In this case, Landowner's conveyance to Peter created a single 3.56–acre tract that was adjacent to the Parcel 1, which was jointly owned by Landowner and James. Although the 3.56–acre tract continued as an agricultural use, it was less than ten acres and no evidence was presented to demonstrate that it had an anticipated yearly gross income of at least $2,000. Consequently, Landowner's conveyance of the 3.56–acre tract does not meet the requirements of Section 3 and because the conveyance does not qualify as a separation under Section 2 of the Act, it is necessarily subject to the split-off provision of Section 6.[11] *Feick*. Because Landowner's conveyance qualified as a split-off, both Parcel 1 and Parcel 2 are subject to roll-back taxes under Section 8 of the Act, 72 P.S. § 5490.8,[12] and the trial court properly affirmed the Board's decision imposing roll-back taxes for tax years 1994–1998.[13] Accordingly, the order of the trial court is affirmed.

---

10. Although not defined in the Act, a "division" is the "[a]ct of distributing among a number." Black's Law Dictionary 479 (6th ed.1990). Landowner contends that the trial court erred in concluding that a "division" occurred with the change in ownership created by the deeds. Contrary to Landowner's contention, a division did occur when she conveyed the property to herself and her sons. Before the conveyance, Landowner was the sole owner of both parcels and all three tracts contained therein. After the conveyance, Landowner became the co-owner of both parcels, but the remaining co-ownership interests were divided between her sons.

11. *See supra* p. 688.

12. *See supra* text accompanying note 6.

13. Landowner also contends that the trial court erred in denying her the opportunity to introduce parol evidence to demonstrate that the 3.56–acre tract was conveyed to Peter by mistake. In the absence of fraud, accident or mistake, the nature and quantity of the real estate interest must be determined by the deed itself and cannot be shown by parol evidence. *Pennsylvania Electric Co. v. Waltman*, 448 Pa.Super. 174, 670 A.2d 1165 (1995), *petition for allowance of appeal denied*, 544 Pa. 611, 674 A.2d 1074 (1996). Although it was later determined that the 3.56–acre tract was conveyed in remainder to Peter by

**686**

### ORDER

AND NOW, this 18th of June, 1999, the order of the Court of Common Pleas of Berks County at No. 98–5285 dated November 30, 1998, is affirmed.

mistake, evidence relating to circumstances subsequent to the deed cannot be admitted to vary the interpretation of the plain language of the deed instrument. *Johns v. Castellucci,* 264 Pa.Super. 591, 401 A.2d 753 (1979). Consequently, Landowner's contention is without merit.