# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Maula : 
 : No. 1341 C.D. 2015
v. : 
 : Argued: September 14, 2016
Northampton County Division of : 
Assessment and County of : 
Northampton : 
 : 
Appeal of: County of Northampton : 


BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE ROBERT SIMPSON, Judge
HONORABLE P. KEVIN BROBSON, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE JULIA K. HEARTHWAY, Judge
HONORABLE JOSEPH M. COSGROVE, Judge


OPINION BY
JUDGE McCULLOUGH                                    FILED: November 7, 2016


Northampton County (County) appeals from the July 2, 2015 order of the Court of Common Pleas of Northampton County (trial court), which reversed the County Revenue Appeals Board's (Board) October 22, 2014 decision imposing roll-back taxes on Anthony Maula (Maula) pursuant to the Pennsylvania Farmland and Forest Land Assessment Act of 1974 (Act).[1]

---

[1] Act of December 19, 1974, P.L. 973, *as amended*, 72 P.S. §§5490.1 – 5490.13. The Act is commonly known as the Clean and Green Act.

## Facts and Procedural History

Maula owned a contiguous tract of land comprised of three parcels which were enrolled into the Act's Clean and Green preferential tax program; Parcels A, B, and C. After nonpayment of outstanding property taxes on the smallest parcel, Parcel C, in the amount of $266.12, the County sold Parcel C at a tax sale. Thereafter, the County, claiming that the tax sale was a "split-off" as defined by the Act, changed the tax assessment of the entire tract and imposed roll-back taxes on the same. The parties submitted a joint stipulation of facts summarizing the relevant facts as follows:

> 1. [Maula] is the former owner of a "contiguous tract" of land, as the term is defined by Section [2] of the [Act], located on Jacoby Run Road in Upper Mt. Bethel Township.
>
> 2. The parcels of the contiguous tract have separate ID numbers as follows:
>
>> (a) Parcel ID #C11 9 11A 0131 (26.7 acres) ("Parcel A")
>>
>> (b) Parcel ID #C11 9 11B 0131 (55.2 acres) ("Parcel B"); and
>>
>> (c) Parcel ID #C11 9 11C 0131 (2.88 acres) ("Parcel C").
>
> 3. On April 22, 2009, [Maula] enrolled the entire contiguous tract (Parcels A, B and C) for preferential assessment under [the Act].
>
> 4. Parcel C consists of 2.88 acres and is used as a detention basin.
>
> 5. [Maula] failed to pay real estate taxes on Parcel C for the years 2011, 2012 and 2013.

6. On or about July 22, 2013 and multiple times thereafter, [Maula] was notified by the [County] Tax Claim Bureau that if he failed to pay taxes due and owing on Parcel C in the amount of $266.12, Parcel C would be sold at the September 24, 2013 tax-upset sale.

7. [Maula] failed to pay back taxes in the amount of $266.12 and therefore Parcel C was sold at the subsequent tax sale.

8. On March 21, 2014, pursuant to the tax sale, the [County] conveyed title to Parcel C to Romany Investments, LLC.

9. On June 13, 2014, [Maula] sold Parcel A to Patricia Setar.

10. [Maula] retained title to Parcel B only. Parcel B is a 55.2 acre parcel classified by [the County] as agricultural, rural land, vacant over 10 acres.

11. On or about July 11, 2014, the County Assessment Office learned that Parcel C had been conveyed to a third party; pursuant thereto the County Assessment Office provided [Maula] notice of rollback taxes due and owing for Parcels A, B and C.

12. On August 5, 2014, the [County] Division of Assessment notified [Maula] of a change of assessment for Parcels A, B and C. The prior assessment for Parcel B was $3,200.00 and the new assessment was $111,100.00.

13. The basis for the change in assessment on the August 5, 2014 notification was the statement "Take Out of [the Act]". The Division of Assessment provided no additional explanation for the termination of the preferential assessment for Parcel B.

14. [Maula] filed a timely appeal of the change of assessment to the [Board].

15. The Board convened a hearing on the appeal on October 21, 2014.

16. The Board determined by way of a written decision dated October 22, 2014 that it would not change the assessment.

(Reproduced Record (R.R.) at 42a-44a) (internal citations omitted).

Maula appealed the Board's determination to the trial court, which reversed the Board and reasoned that:

Because the tax-upset sale and subsequent conveyance of Parcel C upon which [the County Division of Assessment] rested its decision to terminate the contiguous tract's preferential assessment and to impose roll-back taxes does not meet the definition of a "split-off" as contained in [the Act], [Maula] is not liable for roll-back taxes and the Board erred in failing to reverse [the County Division of Assessment's] decision to remove [Maula's] parcel from [the Act's] preferential treatment and to impose roll-back taxes.

(R.R. at 99a-100a.)

The County appealed the trial court's decision to this Court,[2] arguing that Maula's failure to pay real estate taxes on Parcel C, which led to the conveyance of the same at a subsequent tax sale, constituted "other action of the owner" pursuant to the Act's definition of a "split-off." The County further argues that Maula's impermissible split-off renders each of the parcels subject to roll-back taxes.

Conversely, Maula argues that his failure to pay taxes was not "other action of the owner" sufficient to constitute a split-off. According to Maula, he is not liable for roll-back taxes on any of the parcels because he did not conduct a "split-off."

---

[2] "This Court's review in a tax assessment appeal is limited to determining whether the trial court abused its discretion, committed an error of law or reached a decision not supported by substantial evidence." *Sher v. Berks County Board of Assessment Appeals*, 940 A.2d 629, 632 n.4 (Pa. Cmwlth. 2008).

4

## Discussion

The Act established a land conservation program, commonly known as the Clean and Green program, which was designed to:

> protect a landowner from being forced to cease agricultural development or sell a portion of . . . land in order to pay unusually high taxes and to assure landowners that their land would not be assessed at the same rate as adjacent property under pressure to be developed and not enrolled in the program by ignoring the development value of land for tax purposes and encouraging landowners to preserve the land in its current state.

*Sher v. Berks County Board of Assessment Appeals*, 940 A.2d 629, 631 n.2 (Pa. Cmwlth. 2008) (internal quotations omitted).

To encourage conservation, the Clean and Green program "provides a lower tax rate appropriate for land devoted to farming and forest reserve purposes." *Feick v. Berks County Board of Assessment Appeals*, 720 A.2d 504, 505 (Pa. Cmwlth. 1988).

A landowner who participates in the Clean and Green program may be subject to roll-back taxes if he "conducts the split-off" of the land. 72 P.S. §5490.6(a.1)(1). Specifically, section 6 of the Act states that:

> The split-off of a part of land which is subject to preferential assessment under this act shall subject the land so split off and the entire tract from which the land was split off to roll-back taxes as set forth in section 5.1,[3] except as provided in this subsection. *The landowner who conducts the split-off shall be liable for payment of roll-back taxes. . . .*

---

[3] 72 P.S. §5490.5a, added by Section 6 of the Act of December 21, 1998, P.L. 1225.

*Id.* (emphasis added).

It is clear from this language that a landowner is liable for roll-back taxes if he "conducts" the split-off. "Conduct" is defined as "to direct or take part in the operation or management of; to direct the performance of; . . . to cause (oneself) to act or behave in a particular and esp. in a controlled manner[.]" MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 240 (10th ed. 2001).

Section 2 of the Act requires "a division, by conveyance or other action of the owner," and defines a "split-off" as:

> A division, *by conveyance or other action of the owner*, of lands devoted to agricultural use, agricultural reserve or forest reserve and preferentially assessed under the provisions of this act into two or more tracts of land, the use of which on one or more of such tracts does not meet the requirements of section 3.[4]

72 P.S. §5490.2 (emphasis added).

It is undisputed that Maula did not convey Parcel C. Therefore, the pertinent inquiry before this Court is whether Maula's failure to pay real estate taxes constituted "other action of the owner." While it is clear that the failure to pay taxes was not a "conveyance," the County argues that the failure to pay taxes was "other action of the owner" because the County's Tax Claim Bureau could then conduct a sheriff's sale, which it did, and thereby conveyed title to Parcel C to a third-party purchaser. The County argues that Maula's failure to pay taxes, his "inaction," directly caused the "split-off." Maula contends that this argument is inconsistent with the plain meaning of the Act, which requires a "conveyance or other action of the owner." Maula further contends that the County cannot argue that his failure to pay

---

[4] 72 P.S. §5490.3.

6

taxes was the direct cause of the split-off because the Act explicitly requires "other action" on the part of the landowner, not inaction. We agree.

Although Maula's nonpayment of taxes, his alleged "other action," may have provided a legal basis for the tax sale, this "other action" did not, in and of itself, create a conveyance or a "split-off." The Act is clear that roll-back taxes shall be imposed only when it is the "***landowner who conducts the split-off***." 72 P.S. §5490.6(a.1)(1) (emphasis added). As Maula correctly argues, the sale of Parcel C at an upset tax sale did not constitute an impermissible split-off because it was not a division of a larger tract "by conveyance or other action of the owner." It is clear that in such a scenario it was the Tax Claim Bureau which *acted* to cause the conveyance. The County conveyed Parcel C, as trustee grantor, to the successful purchaser in fee simple in accordance with the Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§5860.101 – 5860.803.

The Statutory Construction Act of 1972 provides that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. §1921(a). Moreover, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."[5] 1 Pa.C.S §1921(b).

The definition of "split-off" is clear and free of any ambiguity. A "split-off" requires a "conveyance or other action of the owner." 72 P.S. §5490.2. Here, the County would impose liability for the result of a landowner's internal thought

_____

[5] Although a statutory provision exempting persons and property from taxation shall be strictly construed, 1 Pa.C.S. §1928(b)(5), this canon of construction cannot usurp the statute's plain, unambiguous language.

7

processes, i.e., *ignoring* tax notices or *deciding* not to pay outstanding real estate taxes, even if the internal thought processes produced **no action** and even when the record lacks any findings to support such imposition.[6] It is clear that "[a] division, by conveyance or *other action*" by the owner means just that; it requires a conveyance or other action. 72 P.S. §5490.2 (emphasis added).

Moreover, pursuant to the statutory construction doctrine of *ejusdem generis* ("of the same kind of class"), where general words follow specific enumerated terms, "the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated." *Shire v. Workers' Compensation Appeal Board (General Motors)*, 828 A.2d 441, 444 (Pa. Cmwlth. 2003) (quoting *Independent Oil and Gas Association of Pennsylvania v. Board of Assessment Appeals of Fayette County*, 814 A.2d 180, 183 (Pa. 2002)). Here, the specific enumerated term is "conveyance" and the general term is "other action." Thus, pursuant to the doctrine of *ejusdem generis*, "other action" must be construed as of the same general nature as "conveyance." Clearly, a landowner's failure to pay real estate taxes is not of the same general nature as a conveyance by the landowner. Similarly, the Act requires that the conveyance or other action be performed by the owner. In the present matter, the conveyance was actually performed by the County via the tax sale. A tax sale is not a "conveyance or other action **of the owner**." 72 P.S. §5490.2 (emphasis added). It would be a strained statutory construction to impose liability on a landowner for purportedly allowing a conveyance to occur when a third-party actually performs the conveyance, not the landowner. Indeed,

---

[6] However, the inadequacy of the record to support such a finding in the present matter does not foreclose the possibility that a different record may contain proof that a taxpayer intentionally chose not to pay taxes to strip himself of property enrolled in the Clean and Green program that he no longer desired simply to avoid any potential roll-back tax liability.

8

"conveyance" is defined as "[t]he voluntary transfer of a right or of property." BLACK'S LAW DICTIONARY 357 (8th ed. 2004). As the trial court aptly noted:

> [The Act] plainly implies active involvement by the landowner in the decision to voluntarily conduct a split-off. To the contrary, a landowner who passively allows a parcel subject to [the Act] to be divided from a contiguous tract, or who knowingly or unknowingly allows it to be sold at a judicial sale, cannot be said to have "conducted" or taken "action" consistent with a split-off.

(R.R. at 99a.)

Additionally, we find this Court's decision in *Saenger v. Berks County Board of Assessment Appeals*, 732 A.2d 681 (Pa. Cmwlth. 1999), instructive. In *Saenger*, a landowner and her husband enrolled two parcels of property into the Clean and Green program; parcel 1 was a tract consisting of thirty-nine acres and parcel 2 was two non-contiguous tracts measuring 17.475 acres and 3.56 acres, respectively. Subsequently, the landowner's husband died, making her the sole owner of both parcels. Thereafter, she conveyed parcel 1 to herself and her son, James, and parcel 2 to herself and her other son, Peter. Consequently, the local assessment office removed both parcels from the Clean and Green program because it determined that the landowner's conveyance of the 3.56 acres parcel to Peter constituted a "split-off" and subjected both parcels to roll-back taxes. The local appeals board affirmed the assessment office's decision and the landowner appealed to the trial court, which affirmed the board's decision.

On appeal to this Court, the landowner argued that a "split-off" had not occurred because the land's use had not changed, even though its ownership had been transferred. However, we noted that the General Assembly had amended the Act to include the current definition of a "split-off" to address that precise situation and, citing our decision in *Feick v. Berks County Board of Assessment Appeals*, 720 A.2d

9

504 (Pa. Cmwlth. 1998), stated that if any land that was "split-off" could not satisfy the program's criteria, i.e., agricultural use and larger than ten acres, all of the land listed in the program's application was subject to roll-back taxes. We reasoned that the landowner's conveyance to Peter created a single 3.56-acre tract. Therefore, although the tract continued its agricultural use, it was less than ten acres and we held that the landowner's conveyance constituted a "split-off" subjecting both parcels to roll-back taxes.

We find *Saenger* persuasive because it delineates the General Assembly's intent in promulgating the current definition of "split-off." The purpose of imposing roll-back taxes for a landowner who conducts a split-off is to ensure that the landowner does not benefit from the preferential tax program, subsequently divide the land or change its use, and receive a windfall for enrolling in the preferential tax program. Here, we do not believe our holding circumvents the mischief the General Assembly sought to address because Maula did not receive a windfall; rather, he was involuntarily dispossessed of his property based on $266.12 in real estate tax liability.

## Conclusion

Accordingly, because Maula's failure to pay real estate taxes was not a "conveyance or other action of the owner" as required to constitute a "split-off" under the Act, the trial court's order is affirmed.[7]

_____
PATRICIA A. McCULLOUGH, Judge

---

[7] Based on the foregoing disposition, we need not address the County's argument that each of the parcels is subject to roll-back taxes.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Maula                       :
                                     :   No.  1341 C.D. 2015
             v.               :
                                       :
Northampton County Division of      :
Assessment and County of            :
Northampton                        :
                                       :
Appeal of:  County of Northampton   :

## ***ORDER***

AND NOW, this 7th day of November, 2016, the July 2, 2015 order of the Court of Common Pleas of Northampton County is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Anthony Maula | : | |
| | : | |
| v. | : | |
| | : | |
| Northampton County Division | : | |
| of Assessment and County of | : | |
| Northampton | : | |
| | : | No. 1341 C.D. 2015 |
| Appeal of: County of Northampton | : | Argued: September 14, 2016 |


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE ROBERT SIMPSON, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE JULIA K. HEARTHWAY, Judge
                HONORABLE JOSEPH M. COSGROVE, Judge


DISSENTING OPINION BY
JUDGE COVEY                        FILED: November 7, 2016


Because I believe that Anthony Maula's (Maula) behavior constituted "other action of the owner," as referenced in Section 2 of the Pennsylvania Farmland and Forest Land Assessment Act of 1974,[1] commonly known as the Clean and Green Act (Act),[2] I respectfully dissent.

This Court has explained:

> Under [the Act], a property enrolled in the Clean and Green program may be divided by a 'split[-]off' or by a 'separation.' The tax consequences of each action are quite

---

[1] Act of December 19, 1974, P.L. 973, *as amended*, 72 P.S. §§ 5490.1 - 5490.13.

[2] "The Act created the '[C]lean and [G]reen' program to assure landowners that their land would not be assessed at the same rate as adjacent property under pressure to be developed and not enrolled in the program by ignoring the development value of land for tax purposes **and encouraging landowners to preserve the land in its current state.**" *Saenger v. Berks Cnty. Bd. of Assessment Appeals*, 732 A.2d 681, 682 n.1 (Pa. Cmwlth. 1999) (emphasis added).

different. A split-off is a newly-created tract of less than ten acres and, regardless of whether that tract continues in an agricultural use, will subject the property owner to roll-back taxes on the land from which the division was made *and* the new tract created by division. On the other hand, a new tract created by separation, *i.e.,* one that is larger than ten acres and continues in agricultural use, does not create liability for roll-back taxes.

*Moyer v. Berks Cnty. Bd. of Assessment Appeals*, 803 A.2d 833, 838 (Pa. Cmwlth. 2002) (footnote omitted); *see also* Section 5.1 of the Act, 72 P.S. § 5490.5a.[3] Section 2 of the Act defines "[**s**]**plit-off**[]" as:

A division, by **conveyance or other action of the owner**, of lands devoted to agricultural use, agricultural reserve or forest reserve and preferentially assessed under the provisions of this [A]ct into two or more tracts of land, the use of which on one or more of such tracts does not meet the requirements of [S]ection 3 [of the Act].

*Id*. (text emphasis added).

The Majority holds that Maula's failure to pay taxes which resulted in the tax sale of Parcel C did not constitute "other action of the owner," and thus, no split-off occurred. I strongly disagree.

Initially,

'[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.' 1 Pa.C.S. § 1921(a).

Generally, the best indication of legislative intent is the statute's plain language. **We look to the language of the statute, which, if plain and clear, we simply apply**; **we may not disregard a statute's plain language in order to pursue the statute's spirit**. 1 Pa.C.S. § 1921(b).

---

[3] Added by Section 6 of the Act of December 21, 1998, P.L. 1225.

*Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap)*, 81 A.3d 830, 840 (Pa. 2013) (citation omitted; emphasis added).  "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage[.]" 1 Pa.C.S. § 1903(a).  Although courts generally interpret tax statutes in favor of the taxpayer, this Court has consistently held that "**a statute creating a preferential tax treatment must be strictly construed *against* the taxpayer**."  *Melcher v. Berks Cnty. Bd. of Assessment Appeals*, 93 A.3d 522, 529 n.8 (Pa. Cmwlth. 2014) (emphasis added); *see also Sher v. Berks Cnty. Bd. of Assessment Appeals*, 940 A.2d 629 (Pa. Cmwlth. 2008); *Wending Creek 3656, LLC v. Potter Cnty. Bd. of Assessment Appeals*, 885 A.2d 690 (Pa. Cmwlth. 2005).  The Act clearly creates a tax preference and, accordingly, must be strictly construed **against** Maula.  *See Hydrusko v. Cnty. of Monroe*, 699 A.2d 828 (Pa. Cmwlth. 1997).

Moreover, in interpreting this statutory section, I note that there is no indication in the Act that "other action of the owner" must bear similarity to a "conveyance."  72 P.S. § 5490.2.  Although the doctrine of "*ejusdem generis*" holds that "when a general word or phrase follows a **list** of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed[,]" **there is no such *list*** preceding the words "other action of the owner."  *Black's Law Dictionary* 594 (9th ed. 2009) (text emphasis added), 72 P.S. § 5490.2.  Our Superior Court has further explained the *ejusdem generis* doctrine: "when a **list** of <u>two or more specific descriptors</u> is followed by a more general descriptor, the otherwise wide meaning of the general descriptor must be restricted to the same general class of the specific descriptors that preceded it."  *Commonwealth. v. Melvin*, 103 A.3d 1, 54 (Pa. Super. 2014) (emphasis added).  There are not "two or more specific descriptors" preceding the general term "other action of the owner."  *Id.*, 72 P.S. § 5490.2.  The **only** specific descriptor preceding that general descriptor is "conveyance."  The

doctrine of *ejusdem generis*, by definition, clearly is not applicable and the Majority's reliance thereon misinterprets Section 2 of the Act.[4]

Here, in reversing the County Revenue Appeals Board, the trial court reasoned:

> The facts on which [the County] bases its argument that a split-off occurred include that '[Maula] failed to pay real estate taxes,' that '[Maula] failed to pay back taxes,' and that '[the County] conveyed title to Parcel C' following the tax sale. (Joint Stip[ulation] ¶¶ 5, 7-8.) None of these examples involve [Maula] taking any 'action' whatsoever. Further, [the County]'s argument that [Maula's] failure to pay real estate taxes constituted 'action' is contradicted by the following language in Section [6 of the Act]: 'The landowner who *conducts* the split-off shall be liable for payment of roll-back taxes.' 72 P.S. § 5490.6(a.1)(1)[5] (emphasis added). The verb 'conduct' is defined as 'to plan and do (something, such as an activity).' MERRIAM-WEBSTER DICTIONARY (2015). Thus, the statute's use of the term 'conducts' implies that a split-off can only occur if a landowner contemplatively takes some affirmative step to see that a division of property occurs. In other words, the statute plainly implies active involvement by the landowner in the decision to voluntarily conduct a split-off. To the contrary, a landowner who passively allows a parcel subject to [the Act] to be divided from a contiguous tract, or who knowingly or unknowingly allows it to be sold at a judicial sale, cannot be said to have 'conducted' or taken 'action' consistent with a split-off.

Reproduced Record (R.R.) at 98a-99a (footnote omitted).

However, the Act does not require that "a landowner contemplatively take[] some affirmative step." R.R. at 99a. "**[A] court may not graft additional provisions onto a statute** which the General Assembly did not see fit to include." *Twp. of Penn v. Seymour*, 708 A.2d 861, 864 (Pa. Cmwlth. 1998)(emphasis added).

---

[4] Additionally, for reasons explained herein, I believe that even if the doctrine was applicable, Maula's conduct qualifies as "other action."

[5] Added by Section 7 of the Act of December 21, 1998, P.L. 1225.

AEC - 4 -

Moreover, Maula did not "passively allow [his] parcel . . . to be divided[.]"  R.R. at 99a.  This case is not a situation where, for example, an individual's property is taken by adverse possession due to passivity.  Rather, Maula's property was split off due to his **knowing avoidance of his legal duty** to pay his taxes.  "[**A**]**ction**[]" is defined as "[t]he process of doing something; **conduct** or **behavior**."  *Black's Law Dictionary* 32 (9th ed. 2009) (text emphasis added).[6]  "[**C**]**onduct**" means "[p]**ersonal behavior, whether by action or inaction**[.]"[7]  *Id.* at 336 (text emphasis added).  Further, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2004) defines "**action**" as "the bringing about of an alteration by force **or through a natural agency**[.]"  *Id.* at 12 (text emphasis added).

> A taxpayer's **duty**[8] to pay taxes derives from statute **and arises upon his nonpayment of the taxes when due.  The obligation to pay is not contingent on any extrinsic event.**  Although the taxing body may be required to issue an assessment before it may enforce the tax liability through administrative, rather than judicial[] procedures, the absence of such an assessment does not make the debtor's obligation contingent.

*In re Mazzeo*, 131 F.3d 295, 303 (2d Cir. 1997) (emphasis added).  The natural consequence of a taxpayer's **conduct** in not paying his property taxes in Pennsylvania is a tax sale.

The Majority posits that the County conveyed the subject property.  Therefore, Maula is not liable for the roll-back taxes since he did not convey the parcel or take any "other action."  Clearly absent from this premise is the undisputed fact that the County had absolutely no authority to convey the subject property absent

---

[6] *Merriam-Webster's Collegiate Dictionary* 12 (11th ed. 2004) also defines "action" as "BEHAVIOR, **CONDUCT** [.]" (Emphasis added).

[7] The Majority agrees that "conduct" is one's action or behavior.  Majority Op. at 6.

[8] "[**D**]**uty**" means: "obligatory tasks, conduct, service, or functions that arise from one's position (as in life or in a group)" or a "moral or legal obligation[.]"  *Merriam-Webster's* at 388.

Maula's act or behavior in not paying his taxes on the property which is the sole reason for the division.[9]

In conformity with clear, common usage definitions cited above, I believe Maula's behavior constituted "action." Maula enrolled the Property under the Act and signed a "Letter of Intent Accepting Act 319 Program" which the County Recorder of Deeds recorded. *See* R.R. at 58a. "Pennsylvania citizens[] are presumed to know the law[,]" and thus, it is presumed that Maula was aware of the statutory requirements for continued compliance under the Act. *Dep't of Revenue v. Qwest Transmission, Inc.*, 765 A.2d 818, 820 (Pa. Cmwlth. 2000). The Property's enrollment entitled Maula to a reduced assessed value resulting in significantly lower property taxes.[10] Maula paid taxes on Parcels A and B, but chose to ignore the County Tax Claim Bureau's notices that Parcel C would be sold if he failed to comply with his duty to pay the taxes he owed. Maula selected a particular course of action not to pay the outstanding taxes after the County notified him multiple times that such failure would result in the sale of Parcel C. Thus, "by action or inaction," Maula's **behavior directly caused** the tax sale and ultimately the division, the "alteration . . . through natural agency," i.e., the natural, foreseeable consequence.[11]

---

[9] The Majority misconstrues the County's argument by asserting that the County imposed liability based upon Maula's "internal thought processes." Majority Op. at 7-8. There is nothing in the record or the County's brief to substantiate the Majority's position.

[10] Section 3 of the Act, 72 P.S. § 5490.3, provides for a reduced assessment.

[11] I am aware that a failure to pay taxes has been characterized as an omission rather than an act. However, such characterizations generally involved criminal cases, and did not pertain to the specific statutory language at issue. Further, although an omission arises from a failure to act, the omission itself can be an "act." *Black's Law Dictionary* defines "negative **act**" as "the failure to do something that is **legally required**; a nonoccurrence that involves the **breach of a legal duty to take positive action**. . . . – Also termed *act of omission*." *Id*. at 28 (bolded emphasis added). *Merriam-Webster's Collegiate Dictionary* (11th ed. 2004) describes "**breach**" as the "**act** of breaking[,]" and to "BREAK [or] VIOLATE[.]" *Id*. at 151 (text emphasis added). Thus, **the breach** of such a duty constitutes "action." Importantly, our Supreme Court has recognized instances where "**acts** of omission" may impose liability. *Wolf v. Fried*, 373 A.2d 734, 735 (Pa. 1977) (emphasis added). In 2013, our Superior Court referred to the failure to pay income tax as "an **act** of

*Black's Law Dictionary* at 336*; Merriam-Webster's* at 12.  Strictly construing the Act against Maula, as we must, I would hold that the Property was **divided** by Maula's "other action."[12]  72 P.S. § 5490.2.

I am aware of the perceived unfairness in mandating that a property owner who failed to pay $266.12 in property taxes be burdened with roll-back taxes totaling $55,757.61.  However, there is no unfairness here.  The roll-back taxes imposed are simply the taxes that Maula would have been required to pay (like every property owner) had he not voluntarily enrolled the Property under the Act, and maintained the Property in its current state in exchange for the lower tax assessment. The Majority states that *Saenger v. Berks County Board of Assessment Appeals*, 732 A.2d 681, 682 n.1 (Pa. Cmwlth. 1999) is persuasive.  There, Janice Saenger (Saenger) jointly held with her husband two tracts of land enrolled in the Clean and Green program.  One parcel was a tract consisting of thirty-nine acres and the other parcel contained two non-contiguous tracts measuring 17.475 acres and 3.56 acres.  After her husband's death, Saenger transferred each tract to herself and one of her two sons. The local assessment office removed both parcels from the Clean and Green program because Saenger's conveyance of the 3.56 acres constituted a split-off.  Notably, the

omission."  *Commonwealth v. Miskovitch*, 64 A.3d 672, 689 (Pa. Super. 2013) (emphasis added). Here, Maula **acted** when he breached his legal duty to pay his taxes.

[12] Courts "presume that the legislature did not intend an unreasonable or absurd result." *Watts v. Manheim Twp. Sch. Dist.*, 121 A.3d 964, 972 (Pa. 2015).  Interpreting the Act to permit a landowner to avoid roll-back taxes as a benefit of failing to pay due and owing property taxes which the landowner has a clear legal duty to pay certainly would produce an absurd result.  I am mindful that there may be situations where a property owner is simply financially unable to pay outstanding property taxes and does not willingly or negligently permit his/her land to be sold at tax sale.  In such a situation, the property owner's statutory obligation to pay roll-back taxes arises from the **tax sale of the property**.  The time for a property owner to raise his/her inability to pay, and to attempt to negotiate with the municipality is **before** the tax sale.  The law is well-established that a taxing authority has discretion to accept a compromise of delinquent taxes.  *Sanders v. Westmoreland Cnty. Tax Claim Bureau*, 92 A.3d 97 (Pa. Cmwlth. 2014).  Here, there is no record evidence that Maula was unable to pay, or that he approached the taxing authority before the tax sale to attempt to negotiate a payment plan or other resolution to avoid the tax sale.

County relies upon this same case to support its conclusion that Maula's action constituted a split-off. The Majority, however, states that *Saenger*

> delineates the General Assembly's intent in promulgating the current definition of "split-off." The purpose of imposing roll-back taxes for a landowner who conducts a split-off is to ensure that the landowner **does not benefit from the preferential tax program, subsequently divide the land or change its use, and receive a windfall for enrolling in the preferential tax program.** Here, we do not believe our holding circumvents the mischief the General Assembly sought to address because Maula did not receive a windfall; rather, he was involuntarily dispossessed of his property based on $266.12 in real estate tax liability.

Majority Op. at 10 (emphasis added). I strongly disagree that the Majority's holding does not frustrate the General Assembly's pronounced legislative purpose. Maula was dispossessed of his property because he did not pay his property taxes, as would any property owner, whether enrolled in the Clean and Green program or not. Further, Maula **did** benefit from the program; he **did** divide the land through his failure to pay taxes; and, he **did** receive a windfall. *Merriam-Webster's* defines "windfall" as "an unexpected, **unearned**, or sudden gain or **advantage**." *Id*. at 1434 (emphasis added). Maula enrolled his property in a statutory program that established certain requirements in exchange for receiving significantly reduced tax obligations. The County honored its statutory commitment by assessing Maula lower taxes. **Despite Maula failing to adhere to the Act's requirements, Maula was permitted to avoid the statutorily-mandated consequences and walk away without repaying the difference between the reduced taxes he paid, and the higher taxes that others not enrolled in the Clean and Green program were required to pay. Simply put, that is a windfall.**

Although warned that Parcel C would be sold, Maula acted in not fulfilling his legal duty of paying the outstanding taxes and thus Maula "br[ought]

about . . . an alteration . . . through a natural agency[.]" *Merriam-Webster's* at 12. Accordingly, I would hold that the Act mandates the imposition of roll-back taxes in the present case, and Maula is merely required to pay what he would have paid, had he not elected to enroll the Property under the Act.

For these reasons, I respectfully dissent.

_____
ANNE E. COVEY, Judge

Judge Hearthway joins in this dissenting opinion.