DISSENTING OPINION BY
JUDGE COVEY
Because I believe that Anthony Maula’s (Maula) behavior constituted “other action of the owner,” as referenced in Section 2 of the Pennsylvania Farmland and Forest Land Assessment Act of 1974,[1] commonly known as the Clean and Green Act (Act),[2] I respectfully dissent.
This Court has explained:
Under [the Act], a property enrolled in the Clean and Green program may be divided by a ‘split[-]off or by a ‘separation.’ The tax consequences of each action are quite different. A split-off is a newly-created tract of less than ten acres and, regardless of whether that tract continues in an agricultural use, will subject the property owner to rollback taxes on the land from which the division was made and the new tract created by division. On the other hand, a new tract created by separation, ie., one that is larger than ten acres and continues in agricultural use, does not create liability for roll-back taxes.
Moyer v. Berks Cnty. Bd. of Assessment Appeals, 803 A.2d 833, 838 (Pa. Cmwlth. 2002) (footnote omitted); see also Section 5.1 of the Act, 72 P.S. § 5490.5a.[3] Section 2 of the Act defines “[s]plit-off[ ]” as:
A division, by conveyance or other action of the owner, of land's devoted to agricultural use, agricultural reserve or forest reserve and preferentially assessed under the provisions of this [A]ct into two or more tracts of land, the use of which on one or more of such tracts does not meet the requirements of [S]ection 3 [of the Act].
Id. (text emphasis added).
The Majority holds that Maula’s failure to pay taxes which resulted in the tax sale of Parcel C did not constitute “other action of the owner,” and thus, no split-off occurred. I strongly disagree.
Initially,
‘[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give éffect to all its provisions.’ 1 Pa.C.S. § 1921(a).
Generally, the best indication of legislative intent is the statute’s plain language. We look to the language of the statute, which, if plain and clear, we simply apply; we may not disregard a statute’s plain language in order to pursue the statute’s spirit. 1 Pa.C.S. § 1921(b).
Phoenixville Hosp. v. Workers’ Comp. Appeal Bd. (Shoap), 623 Pa. 25, 81 A.3d 830, 840 (2013) (citation omitted; emphasis added). “Words and phrases shall be construed according to rules of grammar and *449 according to their common and approved usage[.]” 1 Pa.C.S. § 1903(a). Although courts generally interpret tax statutes in favor of the taxpayer, this Court has consistently held that “a statute creating a preferential tax treatment must be strictly construed against the taxpayer.” Melcher v. Berks Cnty. Bd. of Assessment Appeals, 93 A.3d 522, 529 n.8 (Pa. Cmwlth. 2014) (emphasis added); see also Sher v. Berks Cnty. Bd. of Assessment Appeals, 940 A.2d 629 (Pa. Cmwlth. 2008); Wending Creek 3656, LLC v. Potter Cnty. Bd. of Assessment Appeals, 885 A.2d 690 (Pa. Cmwlth. 2005).. The Act clearly creates a tax preference and, accordingly, must be strictly construed against Maula. See Hydrusko v. Cnty. of Monroe, 699 A.2d 828 (Pa. Cmwlth. 1997).
Moreover, in interpreting this statutory section, I note that there is no indication in the Act that “other action of. the owner” must bear similarity to a “conveyance.” 72 P.S. § 5490.2. Although the doctrine of “ejusdem generis” holds that “when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted' to include only items of the same class as those listed[,]” there is no such list preceding the words “other action of the owner.” Black’s Law Dictionary 594 (9th ed. 2009) (text emphasis added), 72 P.S. § 5490.2. Our Superior Court has further explained the ejusdem generis doctrine: “when a list of two or more specific descriptors is followed by a more general descriptor, the otherwise wide meaning of the general descriptor must be restricted to the same general class of the specific descriptors that preceded it.” Commonwealth v. Melvin, 103 A.3d 1, 54 (Pa. Super. 2014) (emphasis added). There, are not “two or more specific descriptors” preceding the general term “other action of the owner.” Id., 72 P.S. §' 5490.2. The only specific descriptor preceding that general descriptor is “conveyance.” The doctrine of ejusdem generis, by definition, clearly is not applicable and the Majority’s reliance thereon misinterprets Section-2 of the Act.[4]
Here, in reversing the County Revenue Appeals Board, the trial court reasoned:
The facts on which [the County] bases its argument that a split-off occurred include that ‘[Maula] failed to pay real estate taxes,’ that ‘[Maula] failed to pay back taxes,’ and that ‘[the County] conveyed title to Parcel C’ following the tax sale. (Joint Stipulation] ¶¶ 5, 7-8.) None of these examples involve [Maula] taking any ‘action’ whatsoever. Further, [the County]’s argument that [Maula’s] failure to pay real estate taxes constituted ‘action’ is contradicted by the following language in Section [6 of the Act]: ‘The landowner who conducts the split-off shall be liable for payment of roll-back taxes.’ 72 P.S. § 5490.6(a.l)(l)[5] (emphasis added). The verb ‘conduct’ is defined as ‘to plan and do (something, such as an activity).’ MERRIAM-WEBSTER DICTIONARY (2015). Thus, the statute’s use of the term ‘conducts’ implies that a split-off can only occur if a landowner contemplatively takes some affirmative step to see that a division of property occurs. In other words, the statute plainly implies active involvement by the landowner in the decision to voluntarily conduct a split-off. To the contrary, a landowner who passively allows a parcel subject to [the Act] to be divided from a contiguous tract, or who knowingly or *450 unknowingly allows it to be sold at a judicial sale, cannot be said to have ‘conducted’ or taken ‘action’ consistent with a split-off.
Reproduced Record (R.R.) at 98a-99a (footnote omitted).
However, the Act does not require that “a landowner contemplatively take[ ] some affirmative step.” R.R. at 99a, “[A] court may not graft additional provisions onto a statute which the General Assembly did not see fit to include.” Twp. of Penn v. Seymour, 708 A.2d 861, 864 (Pa. Cmwlth. 1998)(emphasis added). Moreover, Maula did not “passively, allow [his] parcel ... to be divided[.]” R.R. at 99a. This case is not a situation where, for example, an individual’s property is taken by adverse possession due to passivity. Rather, Maula’s property was split off due to his knowing avoidance of his legal duty to pay his taxes. “[A]ction[]” is defined as “[t]he process of doing something; conduct or behavior.” Black’s Law Dictionary 32 (9th ed. 2009) (text emphasis added).[6] “[C]on-duct” means “[personal behavior, whether by action or inaction[,]”[7] Id, at 336 (text emphasis added). Further, Merriam-Webster’s Collegiate Dictionary (11th ed. 2004) defines “action” as “the bringing about of an alteration by force or through a natural agency[.]” Id, at 12 (text emphasis added).
A taxpayer’s duty[8] to pay taxes derives from statute and arises upon his nonpayment of the taxes when due. The obligation to pay is not contingent on any extrinsic event. Although the taxing body may be required to issue an assessment before it may enforce the tax liability through administrative, rather than judicial[] procedures, the absence of such an assessment does not make the debtor’s obligation contingent.
In re Mazzeo, 131 F.3d 295, 303 (2d Cir. 1997) (emphasis added). The natural consequence of a taxpayer’s conduct in not paying his property taxes in Pennsylvania is a tax sale.
The Majority posits that the County conveyed the subject property. Therefore, Maula is not liable for the roll-back taxes since he did not convey the parcel or take any “other action.” Clearly absent from this premise is the undisputed fact that thé County had absolutely no authority to convey the subject property absent Maula’s act or behavior in not paying his taxes on the property which is the sole reason for the division.[9]
In conformity with clear, common usage definitions cited above, I believe Maula’s behavior constituted “action.” Maula enrolled the Property under the Act and signed a “Letter of Intent Accepting. Act 319 Program” which, the County Recorder of Deeds recorded. See R.R. at 58a. “Pennsylvania citizens[ ] are presumed to know the law[,]” and thus, it is presumed that Maula was aware of the statutory requirements for continued compliance under the Act. Dep’t of Revenue v. Qwest Transmission, Inc., 765 A.2d 818, 820 (Pa. Cmwlth. 2000). The Property’s enrollment entitled *451 •Maula to a reduced assessed value resulting in .significantly lower property taxes.[10] Maula paid taxes on Parcels A and B, but chose to ignore the County Tax Claim Bureau’s, notices that Parcel C would be sold if he failed to comply with his duty to pay the taxes he owed. Maula selected a particular course of action not to pay the outstanding taxes after the County notified him multiple times that such failure would result in the sale of Parcel C. Thus, “by action or inaction,” Maula’s behavior directly caused the tax sale and ultimately the division, the “alteration ,.. through natural agency,” i.e., the natural, foreseeable consequence.[11] Black’s Law Dictionary at 336; Memam-Webster’s at Í2. Strictly construing the Act against Maula, as we must, I would hold that the Property was divided by Maula’s “other action.”[12] 72 P.S. § 5490.2.
I am-aware of the perceived unfairness in mandating that a property owner who failed to pay $266.12 in property taxes be burdened with roll-back taxes totaling $55,757.61. However, there is no unfairness here. The roll-back taxes imposed are simply the taxes that Maula would have been required, to pay (like every property owner) had he not voluntarily enrolled the Property under the Act, and maintained the Property in its current state in exchange for the lower tax assessment. The Majority states that Saenger v. Berks County Board of Assessment Appeals, 732 A.2d 681, 682 n.1 (Pa. Cmwlth. 1999) is persuasive. There, Janice Saenger (Saen-ger) jointly held- with her husband two tracts of land enrolled in the Clean and Green program. One parcel, was a tract consisting of thirty-mine acres and the other parcel contained two non-contiguous *452 tracts measuring 17.475 acres and 3.56 acres. After her husband’s death, Saenger transferred each tract to herself and one of her two sons. The local assessment office removed both parcels from the Clean and Green program because Saenger’s conveyance of the 3.56 acres constituted a split-off. Notably, the County relies upon this same case to support its conclusion that Maula’s action constituted a split-off. The Majority, however, states that Saen-ger
delineates the General Assembly’s intent in promulgating the current definition of “split-off.” The purpose of imposing rollback taxes for a landowner who conducts a split-off is to ensure that the landowner does not benefit from the preferential tax program, subsequently divide the land or change its use, and receive a windfall for enrolling in the preferential tax program. Here, we do not believe our holding circumvents the' mischief the General Assembly sought to address because Maula did not receive a windfall; rather, he was involuntarily dispossessed of his property based on $266.12 in real estate tax liability.
Majority Op. at 447 (emphasis added). I strongly disagree that the Majority’s holding does not frustrate the General Assembly’s pronounced legislative purpose. Maula was dispossessed of his property because he did not pay his property taxes, as would any property owner, whether enrolled in the Clean and Green program or not. Further, Maula did benefit from the program; he did divide the land through his failure to pay taxes; and, he did receive a windfall. Merriam-Webster’s defines “windfall” as “an unexpected, unearned, or sudden gain or advantage.” Id. at 1434 (emphasis added). Maula enrolled his property in a statutory program that established certain requirements in exchange for receiving significantly reduced tax obligations. The County honored its statutory commitment by assessing Maula lower taxes. Despite Maula failing to adhere to the Act’s requirements, Maula was permitted to avoid the statutorily-mandated consequences and walk away without repaying the difference between the reduced taxes he paid, and the higher taxes that others not enrolled in the Clean and Green program were required to pay. Simply put, that is a windfall.
Although warned that Parcel C would be sold, Maula acted in not fulfilling his legal duty of paying the outstanding taxes and thus Maula “br[ought] about ... an alteration ... through a natural agency[.]” Merriam-Webster’s at 12. Accordingly, I would hold that the Act mandates the imposition of roll-back taxes in the present case, and Maula is merely required to pay what he would have paid, had he not elected to enroll the Property under the Act.
For these reasons, I respectfully dissent.
Judge Hearthway joins in this dissenting opinion.

. Act of December 19, 1974, P.L. 973, as amended, 72 P.S. §§ 5490.1-5490.13.

. "The Act created the '[CQlean and [G]reen’ program to assure landowners that their land would not be assessed at the same rate as adjacent property under pressure to be developed and not enrolled in the program by ignoring the development value of land for tax purposes and encouraging landowners to preserve the land in its current state.” Saenger v. Berks Cnty. Bd. of Assessment Appeals, 732 A.2d 681, 682 n.1 (Pa. Cmwlth. 1999) (emphasis added).

.Added by Section 6 of the Act of December 21, 1998, P.L. 1225.

. Additionally, for reasons explained herein, I believe that even if tee . doctrine was applicable, Maula’s conduct qualifies as "other action.”

. Added by Section 7 of tee Act of December 21, 1998, P.L. 1225,

. Merriam-Webster's Collegiate Dictionary 12 (11th ed, 2004) also de&nes "action” as "BEHAVIOR, CONDUCT [.]” (Emphasis added),

. The Majority agrees that "conduct” is one's action or behavior. Majority Op. at 445.

. "[Djuty” means: "obligatoty tasks, conduct, service, or functions that arise from one’s position (as in life or in a group)” or a "moral or legal obligation[.]” Merriam-Webster’s at 388.

.The Majority misconstrues the County’s argument by asserting that the County imposed liability based upon Maula's "internal thought processes.” Majority Op, at 445-46. There is nothing in the record or the County's brief to substantiate the Majority's position.

. Section 3 of the Act, 72 P.S. § 5490.3, provides for a reduced assessment.

. I am aware that a failure to pay taxes has been characterized as an omission rather than an act. However, such characterizations generally involved criminal cases, and did not pertain to the specific statutory language at issue. Further, although an omission arises from a failure to act, the omission itself can be an “act,” Black's Law Dictionary defines "negative act” as "the failure to do something that is legally required; a nonoccurrence that involves the breach of a legal duty to take positive action....—Also termed act of omission,” Id. at 28 (bolded emphasis added). Merriam-Webster’s Collegiate Dictionary (11th ed. 2004) describes "breach” as the “act of breaking!;,]” and to "BREAK [or] VIOLATE[J” Id. at 151 (text emphasis added). Thus, the breach of such a duty constitutes "action." Importantly, our Supreme Court has recognized instances where "acts of omission” may impose liability. Wolf v. Fried, 473 Pa. 26, 373 A.2d 734, 735 (Pa. 1977) (emphasis added). In 2013, our Superior Court referred to the failure to pay income tax as "an- act of omission.”- Commonwealth v. Miskovitch, 64 A.3d 672, 689 (Pa. Super. 2013) (emphasis added). Here, Maula acted when he breached his legal duty to pay his taxes.

.Courts "presume that the legislature did not intend an unreasonable or absurd result.” Watts v. Manheim Twp. Sch. Dist., 121 A.3d 964, 972 (Pa. 2015). Interpreting the Act to permit a landowner to -avoid roll-back taxes as, a-benefit of failing to pay due and owing property taxes which the landowner has a clear legal duty to pay certainly would, produce an absurd result. I am mindful' that there • may be- situations where a properly ■owner is simply financially unable to pay outstanding property taxes and does not willingly or negligently permit his/her land to be sold at tax sale. In such a situation, the property owner's statutory obligation to pay roll-back taxes arises from the tax sale of the property. The time for a property owner to raise his/her inability to pay, and to attempt to negotiate with the municipality is before the tax sale. The law is well-established that á taxing authority has discretion to accept a compromise of delinquent taxes, Sanders v. Westmoreland Cnty. Tax Claim Bureau, 92 A.3d 97 (Pa. Cmwlth. 2014). Here, there is no record evidence that Maula was unable to pay, or that he approached" the taxing authority before the tax sale to attempt to negotiate a payment plan or other resolution to avoid the tax sale.